*IN RE* THE WILL OF ELLEN A. CRAWFORD, *EX PARTE* SMYTHE, EX., v. IRICK.

1. ATTESTATION—WITNESSES.—A WILL duly executed by a testator in presence of three witnesses, two of whom write their names as witnesses, and the second, at the request of the third, in her presence and in the presence of

the testator and the witnesses, writes the name of the third without her touching the pen, has been legally attested under our statutes.

Before BUCHANAN, J., Charleston, July 20, 1895.   Reversed.

Proceeding in the probate court for the county of Charleston, for the probate in due form of law of the will of Ellen A. Crawford, upon motion of Charlotte Hartnett.   After taking the testimony, the probate judge made the following decree on May 20, 1895:

On the 10th day of February, 1892, J. Adger Smythe filed his petition in this court, setting out that Miss Ellen Ann Crawford had departed this life, leaving a last will and testament, and praying that said will be admitted to probate, and that letters testamentary be issued to him.   On the same day, A. G. Magrath, jr., then probate judge, upon the testimony of R. S. Forsythe, decreed that the said instrument in writing, purporting to be the last will and testament of Ellen Ann Crawford, be admitted to probate in common form, and on the same day, J. Adger Smythe duly qualified and entered upon the discharge of his duties as executor, and continued so to do until the 29th May, 1894, when a petition was filed in this court by Charlotte Hartnett, claiming to be a niece of the testatrix, her petition stating that she was a person interested to invalidate said will, and praying that the said will be proved in due form of law, according to section 1870 of the General Statutes of South Carolina.   (Section 2003 Revised Statutes S. C. 1893, vol. 1.)   In response to this petition the executor, J. Adger Smythe, on the 18th June, 1894, filed his petition, praying to be permitted to swear and examine witnesses upon the same, for the publishing or confirming said will.   To this petition answers were filed by Charlotte Hartnett and Wilhelmina Crawford Irick.

On the 22d April, 1895, motion was made by the petitioner before this court, that Charlotte Hartnett be required to advance costs and charges of the probate of the

will in solemn form.   This motion was refused, and on the 15th day of May, 1895, testimony was taken, and on the 17th day of May, 1895, argument was made.   The petitioner examined Samuel W. Forsythe and his sister, Mrs. Cosgrove, witnesses to the will in question, and Miss Maggie E. Birmingham.   No testimony was offered by the respondents.   (The testimony taken is hereto annexed.)

The testimony, in substance, states that Ellen Ann Crawford, being minded to make her will, called upon Mr. Augustine T. Smythe, her lawyer, and he, at her request, and under her instructions, prepared a will, which was handed to her, and she then went to the house of her old friend, Mrs. Forsythe, and there executed it; that she was of sound and disposing mind is fully testified to; that she knew what she was doing is a certain fact, and that she knew how to execute the instrument is also apparent.   She told them what she was about to do, and requested Mrs. Forsythe, Miss Forsythe (Cosgrove), and Miss Birmingham to witness the will, which she signed; Mr. Samuel W. Forsythe coming into the room at the time, witnessed with his mother and sister instead of Miss Birmingham, who, however, remained in the doorway of the room and knew what was being done, and testifies fully to all the facts and circumstances.

The testatrix, from the testimony, signed the will in the presence of these people, and then requested them to witness her will.   Mr. Forsythe signed first, Miss Forsythe signed for herself, and then, at the request of her mother and of the testatrix, signed her mother's name for the latter. It appeared that Mrs. Forsythe was aged and very nervous, and wrote with such difficulty that her almost universal custom was to have her daugher, Miss Forsythe, sign all papers for her, and do all her writing; and, for this reason and in accordance with this habit, she requested her daughter to sign her name to the will as a witness on this occasion.

In this case we are happily without the usual attempts to destroy a will by the usual charges of undue influence or incapacity.   Everything in the testimony, and there has

not been any attempt to rebut it in any way, shows the clear mind of an intelligent person, who, desiring to make a will, consulted learned counsel, has the proper paper drawn, and then goes to her life-long friends to have them become the witnesses to her intention, in regard to what she has to dispose of.

The respondents rest their case solely and entirely upon what they regard as a defective attestation of the will on the part of one of the witnesses to it. The whole question involved in the case, it will be seen at a glance, is, was this a proper execution of a will as required by our statute, and whether or not the delegation of the power of signing by one of the witnesses to the other was a proper execution of the will?

The tendency of the courts is, without doubt, to favor and uphold a will if it can be done, deeming it no light matter to set aside the intention of one who has not the opportunity of correcting error, if error there be. The books are full of such decisions and need not be referred to here. The counsel for the petitioner, the executor, claims that, under our American decisions, it was a proper execution of the will, and the counsel for the respondents claim that, under the English decisions, to which they claim our courts are committed, the will is void, as improperly executed.

I had the pleasure of listening to able arguments on both sides as to the question involved, and have been convinced, and I adopt the reasoning of the consel for the petitioner. I take it that the object of the statute in requiring witnesses, is not so much to have their signatures subscribed by themselves, as it is for them to have ocular evidence of the identity of the instrument they are called to witness. In the case of *Lord* v. *Lord*, 42d American Reports, page 565, which, I confess, has influenced me in arriving at a conclusion in this matter, the judge who delivered the opinion seems to take this view of the question, as he states, in concluding the opinion of the court: "To require a person, whose name is written in a testamentary transaction, to

hold or touch the pen, or to do anything which the law does not require him to do in other cases of attestation, seems to establish a distinction without a difference." That an illiterate person can be a witness to a will, some one writing the witness' name, making a cross mark and the witness merely touching the pen, and be considered a good witness, and an intelligent witness who can read and write, instead of signing as she might have done, but directing another intelligent person to write her name for her, and not be considered as a good witness, even after her sworn acknowledgment to the act, is certainly a distinction without a difference. The signature of Mrs. Forsythe was made at her request by her daughter, and also at the request of the testatrix, and was afterwards acknowledged by her when she appeared in the probate court and made the necessary affidavit to prove the will in common form. In my opinion, the will is a good one.

It is, therefore, ordered, adjudged, and decreed, that the paper offered as the will of Ellen Ann Crawford do stand as such, the same having been proved in common and solemn form.

From this decree the defendants appeal, and the Circuit Judge filed the following decree:

Miss Ellen Ann Crawford, a resident of the city of Charleston, but temporarily residing in the city of Columbia, departed this life on the 2d day of February, A. D. 1892, leaving an instrument in writing, purporting to be her last will and testament, bearing date the 26th day of March, 1884.

On the 10th day of February, 1892, the petition of J. Adger Smythe was exhibited to the court of probate for Charleston County. Such petition recited in its second paragraph: "That in the said last will and testament your petitioner, with others, is appointed executor." And in the third paragraph: "Your petitioner prays that the said instrument in writing be now admitted to probate as the last

will and testament of the said Ellen A. Crawford, and that
letters testamentary be granted to him." That on said 10th
day of February, 1892, the paper was probated and proved
in common form by the testimony of Mrs. R. S. Forsythe,
and subscribed by her in her own handwriting, and probate
granted of the same.

On the 29th day of May, 1894, Charlotte Hartnett, a niece
of the said Ellen Ann Crawford, deceased, and one of the
heirs at law and next of kin, and a person interested to in-
validate the said paper as a will, presented her petition to
the court of probate, praying that said alleged will be proved
in due and solemn form. On the 30th day of May, 1894,
honorable A. G. Magrath, probate judge of Charleston
County, directed a notice to J. Adger Smythe, notifying him
that Charlotte Hartnett, through her attorneys, Messrs. W.
M. Fitch and J. Walker Magrath, required the will to be
probated in due and solemn form, as required by section
1820 of the General Statutes of (1893) South Carolina, and
requiring the said J. Adger Smythe, the executor who had
qualified, to prefer a petition, praying to be permitted to
probate said will in due form. On the 18th day of June,
1894, the petition of J. Adger Smythe was preferred, and,
among other things, it alleged, in the fifth paragraph
thereof, that the only persons, in the knowledge of the peti-
tioner, that would have been entitled to distribution of the
estate of the deceased, who died intestate, "were the nieces
of the said Ellen Ann Crawford, to wit: the said Charlotte
Hartnett and Wilhelmina Crawford, now known as Wil-
helmina Irick." Whereupon a summons was directed by
the probate judge to the said Charlotte Hartnett and Wil-
helmina Crawford Irick, requiring them to answer the said
petition within twenty days after the service thereof, ex-
clusive of the day of such service. Service was duly ac-
knowledged, and Mr. Fitch represented Charlotte Hartnett,
and Mr. S. Dibble appeared as attorney for Wilhelmina
Crawford Irick.

Answers were put in for both Charlotte Hartnett and

Wilhelmina Crawford Irick. The answers substantially admitted that the paper had been admitted to probate in common form on the 10th day of February, 1892, but deny that such paper was of any validity, inasmuch as formal execution of the same was not had, as required by law, and that the alleged will was not "subscribed by the witnesses in the manner and form required by law."

On the 15th day of April, 1895, Mr. A. M. Lee, attorney for J. Adger Smythe, gave written notice to the contestant, Charlotte Hartnett, "that on the annexed affidavit and the record in this proceeding, the undersigned will move before his honor the judge of probate, on Monday, the 22d instant, at 11 a. m., for an order directing that Charlotte Hartnett do pay into court such amount as may be necessary to defray the expenses of the executors in the probate of the will of Ellen A. Crawford in solemn form." The affidavit annexed set out among other things that the entire estate had been distributed;" that after the payment of all the debts and specified legacies the executor, in the due course of administration, had distributed the exact rest and residue of the estate of the various residuary legatees in accordance with the directions of the will, holding as trustee for several of the minor residuary legatees their share of the residue to which they were entitled under the will, until a guardian could be appointed for them, and also a certain sum, already agreed on with the probate court, as its fees and costs for closing the estate. That these amounts in his hands are not assets in his hands as executor, but merely temporarily held in trust for others by him." "That there are thus no funds in his hands whatever with which to defray the expenses of proving the will in solemn form." That it will be necessary for the executor to obtain the presence of the witnesses to the will, one of whom resides in the city of Atlanta, State of Georgia. That the executor in his official capacity is in duty bound to go to other expenses also, and must act through counsel learned in the law in this matter, and that all such expenses he is unable as executor to meet

and defray. Wherefore, he prays that, before the executor be ordered to proceed with the proof of the will in solemn form of law, the said petitioner for the same, Charlotte Hartnett, be directed to deposit in court or with the executor such amounts as may be necessary to defray the costs and expenses of the proceeding." The motion was made and refused on the 22d day of April, 1895, after which proof was offered and testimony given, for the purpose of probating the alleged will in due and solemn form.

The evidence disclosed the fact that the signature of the third alleged witness to the will, Mrs. R. S. Forsythe, was made by Mrs. Cosgrove (then Miss M. G. Forsythe), her daughter, at the request of the mother. That (Mrs. Forsythe) the person whose name appears as that of the third witness, was accustomed to get her writing done by others; she could write whenever she wanted to. She did not touch the pen when her daughter was signing her name. This was admitted by the party in the case, and the sole and only question is, can one witness subscribe a will for another witness, by signing the name of such other witness thereto, without some actual contactual relation between them, and when such witness whose name is being written by proxy can write, and is under no physical inability preventing her from writing her own name in her own handwriting? Can a person be a witness by deputy? It is to be observed, that there was no touching of the pen by Mrs. Forsythe while her daughter was writing her name as a witness to the paper. The daughter merely wrote it at the instance of the mother, and upon the part of the mother there was no further participation in the act. Was this a sufficient compliance with our statute, which requires a subscription by the witness? In my opinion, it was not. A contrary construction would be a nullification of the very words, and an undermining and sapping of the purpose of the statute, and its validity and efficacy would be emasculated and gone. To say that one witness can "subscribe" his name by the hand and in the exclusive manual

act of another, when such witness can write, is to encourage forgery and put a direct premium upon fraud.

To say that, under these circumstances, there was a compliance, would be tantamount to a virtual repeal, and a direct impairment of the integrity of the written law, a relaxation without warrant of authority. I am well aware of the existence of some decisions that appear to make against the contention, but that such difference is more apparent than real, an examination in connection with the wording of the various acts, and their application to the particular facts and circumstances of each particular case, will show. Bear in mind, that there is no analogy to be drawn from cases where the pen was touched, for here there was no contactual participation whatever, or any reasoning or construction to be drawn, from the fact that a testator is allowed to sign by the hand and in the exclusive handwriting of another, for this is permitted by the very words of the act itself. Here the proxy completed the whole of the operation as fully as Mrs. Forsythe could have done herself, and as if it had been done by her alone—one person completing the whole signing of the alleged third witness.

There is no unanimity in the works of Jarman, Redfield and Schouler upon the subject, nor is there any harmony in the annotations of such of those works as have been recently edited upon the point. Nor do the cases of *Adam* v. *Chaplain*, 1 Hill Ch., 265; *Welch* v. *Welch*, 9 Rich., 133; *Wooster* v. *Wooster*, 4 Rich., 409; *Sampson* v. *Bradley*, 1 McC., 74; *ex parte Leonard*, 39 S. C., 522, throw any light upon the subject. The exact point seems never to have been raised in this State before. The cases mainly relied upon to sustain the execution of the will are *Jesse* v. *Parker*, 6 Gray, 57 (52 Am. Dec., 102); *Upchurch* v. *Upchurch*, 16 B. Monroe, 102; *Montgomery* v. *Perkins*, 2 Metcalf, 448 (74 Am. Dec., 419); *Chase* v. *Kitridge*, 93 Mass., 59; *Lord* v. *Lord*, 58 New Hampshire, 7 (42 Am. Rep., 565), and *in re Strong's Will*, 16 N. Y. Supplement No. 1, page 104. In *Jesse* v. *Parker*, the witness made his mark.

In *Montgomery* v. *Perkins*, the witness held the pen as the draughtsman wrote the names. In *Upchurch* v. *Upchurch*, the two witnesses, whose names were written by Upchurch, could not write; and even if it were the sound doctrine, that where the witness could not write, his entire subscription may be made by another for him, this case would be inapplicable here, inasmuch as Miss Crawford could write her name very well, and did subscribe her name very legibly (nearly eight years after) to the affidavit before the judge of probate. *In re Strong's Will*, there was not only a statute differing from ours, but the witness "was incapacitated from writing by reason of a felon on his right hand." The criticism on *Upchurch* v. *Upchurch* is in point. The effect of *Lord* v. *Lord* (if the statutes were the same) being put by the court upon the maxim *qui facit per alium facit per se*, scarcely carries with it any authority. How this maxim can be invoked to sustain an act which is required by law to be done personally, I do not understand. Schouler on Wills, sec. 339, note 7, expresses disapproval of the views announced in this case. These cases do not justify the contention of the executor, while the other case (*Chase* v. *Hethedge*) is directly against the execution of the will, and shows that such paper is of no force or effect. That there were only two witnesses, in contemplation of law, to the paper proposed as a will, the following authorities fully maintain: *Horton* v. *Johnson*, 18 Ga., 396; *Riley* v. *Riley*, 36 Alabama, 496; *Brush* v. *McFarland*, 29 S. W. Rep., 869; *in re Will of McElwaine*, deceased, 18 N. Y. Eq., 499; in the matter of *Downes' Will*, 42 Wis., 66; *Town of Pawtucket* v. *Ballon*, 15 R. I., 58; *Mechan* v. *Rouke*, 2 Bradt. Sur. Rep., 385; *Ragland* v. *Huntington*, 1 Iredell (N. C.) Law, 561.

While courts always lean to the support of a will, if the law has been complied with substantially, yet where there is an entire absence of a formal requirement of the act, the courts will not hesitate to say so, and declare its total invalidity. Any other construction would be a frittering away of the statute.

It is, therefore, declared, that the paper proposed is no will, for lack of compliance with the statute. It is ordered, that the appeal from the probate court be sustained, and that the order of that court, finding a will, be set aside.

From this decree the plaintiff appeals, on the following exceptions:

First. Because his honor erred in holding "that (Mrs. Forsythe) the person whose name appears as that of the third witness, was accustomed to get her writing done by others; she could write whenever she wanted to;" whereas the uncontradicted testimony shows that she could not write at the time she acted as a witness to the will, on account of infirmity from poor health and nervousness, and invariably had her writing done by her daughter, Miss Forsythe, alone.

Second. Because his honor erred in stating "that the sole and only question is, can one witness subscribe and witness for another witness, by signing the name of such other witness thereto, without some actual contactual relation between them, and when such witness, whose name is being written by proxy, can write, and is under no physical inability, preventing her from writing her own name in her own handwriting;" whereas the uncontradicted testimony shows that the name was not written "by proxy," and that the witness was at that time physically unable to write.

Third. Because his honor erred in holding that the question in the case was whether a person can be "a witness by deputy;" whereas the testimony shows that the signature was not "by deputy," but by the witness acting through another, thereunto requested by her, in her own presence, and thus was in law the act of the witness herself.

Fourth. Because his honor having held that, "if one witness can subscribe his name by the hand and in the exclusive manual act of another, when such witness can write, is to encourage forgery and put a direct premium upon fraud," his honor erred in applying this doctrine to the present case,

because the uncontradicted testimony shows that such witness could not at that time write.

Fifth. Because his honor erred in holding that the "proxy completed the whole of the operation as fully as Mrs. Forsythe could have done herself;" whereas the testimony shows that the act was not done "by proxy," but by Mrs. Forsythe herself, through another acting in her presence.

Sixth. Because his honor erred in declining to apply the case of *Upchurch and Upchurch*, as being inapplicable in the present case, "inasmuch as Mrs. Forsythe could write her name very well;" whereas the testimony shows that at the time of the execution of the will, Mrs. Forsythe, from nervousness and infirmity, was not able to write with satisfaction to herself.

Seventh. That his honor erred in questioning the similarity of the statute in the case of *Lord and Lord* to the statute in South Carolina, and in putting a doubt upon the same; whereas the said statutes are practically identical.

Eighth. Because his honor erred in holding that the case of *Chase* v. *Kittridge* "is directly against the execution of the will, and shows that such paper is of no force or effect;" whereas an examination of the case of *Chase and Kittridge* will show precisely the contrary ruling.

Ninth. Because his honor erred in holding that the signature by the witness could not be made by another, inasmuch as the law requires the witness to make this signature personally; whereas, it is respectfully submitted, that this is the very question now being made, and the law does not so require it, if properly construed, nor should the construction be any stricter with regard to witnesses to a will than with regard to grantors in a deed.

Tenth. Because his honor erred in not holding that the signature of Mrs. Forsythe, as a witness to the will, made by her daughter, was the actual signature of Mrs. Forsythe herself, it having been made for her, at her request, and in her presence, and at the request and in the presence of the testatrix, and in the presence of the other witness also, and

having been afterwards solemnly acknowledged by Mrs. Forsythe, under oath, at the time of the proof of the will. in common form.

Eleventh. Because his honor erred in holding that the paper proposed was no will, for lack of compliance with the statute.

Twelfth. Because his honor erred in not holding, as a matter of law, that the will of Miss Crawford had been properly attested and subscribed by three witnesses, in substantial compliance with the statute.

Thirteenth. Because his honor erred in that he should have overruled the appeal from the probate court, should have sustained the decree of the probate court, and should have decreed that the will of Miss Ellen Ann Crawford was a valid will, and duly executed, according to the laws of South Carolina.

*Mr. A. M. Lee*, for appellant.

*Messrs. W. M. Fitch, J. W. Magrath*, and *S. Dibble*, contra.

March 23, 1896. The opinion of the court was delivered by

MR. CHIEF JUSTICE McIVER. The only question in this case is whether the will of Ellen A. Crawford, offered for probate *in due form of law*, was duly attested. The facts in the case are, in the main, undisputed, and are sufficiently set forth in the decree of the judge of probate (which should be incorporated in the report of this case), in which he held that the will was duly attested, and admitted the will to probate. From this decree the parties who, it seems, would have been entitled to the estate in case there was no will, appealed to the Court of Common Pleas, and the appeal was heard by his honor, Judge Buchanan, who rendered judgment reversing the decree of the judge of probate, and from that judgment J. Adger Smythe, named as executor in the will, appeals to this court upon the several grounds set out in the record, which, with the judgment of Judge Buchanan, should be incorporated in the report of this case.

The only question in the case is whether the fact that one of the persons whose names appear as subscribing witnesses to the will, did not, in fact, write her own name, but requested her daughter, one of the other subscribing witnesses, to write it for her, rendered the attestation by that witness void and of no effect. The undisputed fact is that R. S. Forsythe, whose name appears as one of the subscribing witnesses to the will, appeared before the judge of probate on the 4th day of February, 1892, when the will was offered, by the executor, for probate in *common form*, and subscribed her name to the usual affidavit in such cases, in which, amongst other things, the deponent stated, "that she was present and did see the said instrument of writing duly executed by the said Ellen Ann Crawford, * * * and that R. S. Forsythe (the deponent) and M. G. Forsythe and S. W. Forsythe, in the presence of each other and of the said Ellen Ann Crawford, and at her request, signed their names as witnesses to the due execution of the same." For while one of the grounds of appeal from the decree of the judge of probate imputes error to him "in considering any proof or evidence offered at the proof of the will in common form," it appears from the "Case" that when the testimony as to this matter was offered, no objection was interposed; and, indeed, as we understand the decree of the judge of probate, he does not base his conclusion upon the fact that the witness, R. E. Forsythe, made the affidavit above referred to, but merely states that fact as a part of the history of the case. On the contrary, his conclusion is based upon the conceded facts that the name of R. E. Forsythe, as one of the subscribing witnesses to the will, was written by her daughter, in her presence and at her request, in the presence and at the suggestion of the testatrix, which he held was a sufficient signing by the said R. E. Forsythe. In this conclusion we fully concur. There can be no question that a will may be duly attested by a witness who, being unable to write his name, makes his mark. This is held even in England. *Harrison* v. *Harrison*, 8 Ves., 185, and

*Addy* v. *Greix*, 8 Ves., 504, which cases have been recognized in this State several times. *Adams* v. *Chaplin*, 1 Hill Ch., 266; *Ray* v. *Hill*, 3 Strob., 303. Indeed, this proposition does not seem to be contested by counsel in this case. But they contend that, in order to give efficiency to an attestation by a marksman, the witness must do some manual or physical act, tending to show his participation in such attestation—as, for example, touching the end of the pen-stock or pen-holder, while another guides the pen, in making the mark. It seems to us, that attributing to this useless ceremony of the witness touching with his finger the end of the pen-holder while another guides the pen, the efficiency claimed for it, would be investing a useless form with much more importance than it deserves. What possible security this empty ceremony will afford against fraud, it is is impossible to conceive; for the essential fact, as it is claimed, of the touching of the end of the pen-holder, must, necessarily, be proved by parol evidence, in order to show the participation of the marksman witness in the act of signing; and why may not the fact that the name of the witness was written by another, in his presence and at his request, be proved by the same kind of evidence? The one affords the same, if not better, protection against fraud than the other. The testimony in this case leaves no doubt of the fact, that the names of the three persons selected by the testatrix as witnesses of her will all appear on that paper in the appropriate place; and the fact that the name of one of those witnesses was not written with her own hand, but with the hand of another, at her request and in her presence, seems to us quite as good an attestation as if the mark of such witness had been made by another, she going through the useless ceremony of touching the end of the pen-holder with her finger while the other guided the pen in making the mark.

If the name of a person is signed to a note, receipt, or deed by another, *in his presence and at his request*, the law would regard it as the act of the person whose name is thus

signed. Why? because, though the physical act of signing is done by another, yet such act having been done in the presence and at the request of the person whose name is there written, it is regarded as his act, *qui facit per alium facit, per se.* While one partner cannot bind his copartners ordinarily *by deed,* yet if he signs the name of the copartnership to a deed *in the presence of his copartners, and with their assent,* they are bound. *Stroman* v. *Varn,* 19 S. C., 307. Analogy, therefore, would lead us to the same conclusion as reasoning from the nature of the case has done.

There being no direct authority in this State, so far as we are informed, upon the precise point which we are called upon to decide, we naturally seek for light from the authorities elsewhere. But those authorities seem to be conflicting, and we must follow those which appear to us to be based upon the better reasoning. Some of the cases which have been cited attach great and, as we think, undue importance to the participation by the witness in the mere physical act of signing or making the mark, while other cases, with good reason, as we think, attach but little importance to that circumstance. In *Jesse* v. *Parker,* 6 Gratt., 57, reported also in 52 Am. Dec., 102, one of the attesting witnesses wrote the names of the other two witnesses, in their presence and at their request, and the court held the attestation good. The court, in delivering its opinion, after saying that it had been settled that a witness may attest a will by making his mark, proceeded as follows: "The validity of such an attestation depends upon the signing of the name of the witness, by his authority and in his presence, and not upon the fact of his making a mark or doing some manual act in connection with the signature. The making of a mark would furnish little, if any, means of verifying the signature; and the doing of some manual act in connection with the signature would furnish no additional safeguard, appearing on the body of the instrument, against those frauds which it was the object of the statute (29 Car. 2) to prevent."

The case of *Upchurch* v. *Upchurch*, 16 B. Munroe, 102, is to the same effect. So, also, in the case of *Lord* v. *Lord*, 58 N. H., 7, reported also in 42 Am. Rep., 565, in which we find this language: "One object of the statute (which the court had previously said, 'is copied substantially from that of 29 Car. 2') in requiring an attestation of a will, is to insure identity and to prevent the fraudulent substitution of another document. Another object is to surround the testator with witnesses to judge of his capacity. 2 Greenl. Ev., sec. 691; *Upchurch* v. *Upchurch*, before cited. And all those purposes are as readily attained in the case where the name of the attesting witness is written by the agent at the request of the principal, as where the latter makes his mark or holds a pen guided by another hand." The same doctrine was held in a comparatively recent case in New York, *in re Strong's Will*, 16 N. Y. Supp., 104, decided in 1891, where the cases of *Jesse* v. *Parker* and *Upchurch* v. *Upchurch* were recognized and followed. It is contended, however, that the doctrine laid down in the cases above cited only applies where the witness, whose name is written by another, is *unable to write*, and does not apply to the present case, where the testimony shows that the witness was able to write. We can see no reason whatever for such a limitation of the doctrine, especially where it appears that the witness was at the time *temporarily* incapacitated from writing. Indeed, in the case last cited, *in re Strong's Will*, the doctrine was applied where the witness was only temporarily incapacitated from writing "by reason of a felon on her hand." In a California case, *in re Guilfoyle's Will*, which we find reported in 22 Law Rep. An., 370, with full and instructive notes, we find the following language, which is very pertinent and to the point: "Persons who know how to write may become physically incapable of writing their names by reason of rheumatism, paralysis of the hands, and other causes, besides general physical debility, though of sound mind, and it seems unreasonable that the legislature intended to exclude

all such persons from the privilege of subscribing a will or other instrument by a mark. The language of the Code is, 'when the person cannot write.' This fairly includes all persons who are unable to write from any cause, even though they know how to write."

In this case, the judge of probate finds, as a matter of fact (and there is no exception to this finding), "that Mrs. Forsythe was aged and very nervous, and wrote with such difficulty that her almost universal custom was to have her daughter, Miss Forsythe, sign all papers for her, and to do all her writing, and for this reason, and in accordance with this habit, she requested her daughter to sign her name to the will as a witness on this occasion." Accordingly the daughter did sign her name, in her presence, and in the presence of the testatrix and the other subscribing witness, Mrs. Forsythe, as the testimony shows, leaning over her at the time, and thus, practically, participating in the physical act of signing, if that were necessary. The fact that Mrs. Forsythe was able to sign her own name to the affidavit which she made for proof of the will in common form, can not affect the question, for the obvious reason that such affidavit was made about eight years after the execution of the will, long after she had been relieved from the causes which produced the extreme nervousness from which she was suffering at the time the will was executed. The Circuit Judge seems to have fallen into an error in supposing that the cases upon which we rely were based upon statutes differing from ours. An examination of those cases will show that the statutes there considered were substantially the same as ours, so far as the question here involved is concerned. So, too, his remark as to signing *by proxy* is misleading, for that implies that the agent or proxy signs *in the absence* of the principal; while here the conceded fact is, that the name of Mrs. Forsythe was written by her daughter *in her presence* and *at her request*.

The judgment of this court is, that the judgment of the

Circuit Court be reversed, and that the decree of the judge of probate be affirmed.