MAGGIE ANN SCHNEE v. WILLIAM G. SCHNEE *et al.*

**No. 9,647.**  (60 Pac. 738.)

1. WILLS—*Practice, Probate Court.*  Infants desiring to obtain the probate of a will may institute a proceeding therefor by a next friend, and through him may appeal from a decision of the probate court rejecting a will.

2. ———— *Deposition on Appeal.*  After a proceeding to prove a last will has been appealed to and is pending in the district court, a deposition taken as the code provides may be read in evidence the same as if it had been taken upon a special commission, as provided in the act relating to wills.

3. ———— *Statements and Conduct of Testator Admissible.*  In such a proceeding the statements and conduct of the testator, at and about the time of making a last will which had been lost, spoliated or destroyed after his death, as well as his declarations as to its contents and his purposes in making bequests, are admissible in evidence.

4. ———— *Name of Witness may be Written by Another.*  In attesting a last will, the name of a witness who is unable to write may be written by another at the request and in the presence of such witness and of the testator.  The fact that the witness did not touch the pen or guide the hand when his name was written will not invalidate the attestation.

5. ———— *Proof of Lost Will Sufficient.*  There is sufficient testimony in the record that the last will had been lost, spoliated or destroyed to warrant the admission of the testimony received and to sustain the finding that the will established was not the one previously rejected by the probate court.

Error from Cowley district court; A. M. JACKSON, judge.  Opinion filed April 7, 1900.  Affirmed.

*Joseph O'Hare*, for plaintiff in error.

*C. L. Swarts*, for defendants in error.

The opinion of the court was delivered by

JOHNSTON, J.: This proceeding was brought to obtain probate of the last will of Gilbert Schnee, who died in Cowley county in 1883, and left surviving him

his wife, Annie B. Schnee, who has since intermarried with Frank Reed, and two minor children, William G. and Louise.    Maggie Ann Schnee contests the probate of the will, and claims that she is an heir of Gilbert Schnee.    In his early life Gilbert Schnee married Mary Jane Reed, and a few months after the marriage he procured a divorce from her on the ground that she was unfaithful.    Afterward the divorced woman gave birth to Maggie Ann, and she claims an interest in the estate as the daughter of Gilbert Schnee.    In April, 1892, an application for probate was presented to the probate court of Cowley county by W. P. Hackney, in behalf and as the next friend of the two minor children of Gilbert and Annie B. Schnee.    It was alleged that about two weeks before his death, and while Gilbert Schnee was of sound mind and memory, he executed a will drawn up for him by P. A. Lorry, which was subscribed by Lorry and Frank Reed as witnesses ; that he devised and bequeathed to Mamie Morris, a daughter of Annie B. Schnee by a former marriage, the sum of from $300 to $500, the exact amount to be fixed by her mother, and to Maggie Ann, the daughter of Mary J. Reed, the sum of one dollar, and the residue of his property, personal and real, was given to William G. Schnee and Louise Schnee, his minor children, share and share alike ; that in a few days after the execution of the will he sickened and died, without revoking the will and while the same was in full force and effect.    After setting out a description of property owned by him at the time of his death, it was further alleged that the will sought to be probated had never been probated or offered for probate, and that it had been lost, spoliated or destroyed subsequently to the death of Gilbert Schnee.

Schnee v. Schnee.

Upon proof taken in the probate court, it was decided that a paper purporting to be the last will of Gilbert Schnee had been presented by Annie B. Schnee on June 25, 1883, for probate, and that the court, upon a hearing then had, decided that the paper presented was not a will, the same not having been written and witnessed as the law requires. The probate court held in the present case that the decision of the court rejecting the will in 1883, never having been modified or vacated, is conclusive, and that the will now offered for probate should be rejected. An appeal was taken from the decision of the probate court to the district court, in which, upon a full hearing, the will propounded was found to be the last will and testament of Gilbert Schnee ; that it had been lost, spoliated or destroyed, but that the contents thereof had been substantially proved, and that the same had been duly executed and was in full force and unrevoked at the death of the testator. It was decreed that it should be admitted to probate, and that it was as effectual to pass property of the testator as though the original will had been admitted and duly recorded in the probate court.

It is contended that error was committed in overruling a motion to dismiss the appeal. A ground for dismissal was that Hackney, who appeared for the minors as a next friend and took the steps necessary to perfect the appeal, was without authority. Being infants and not considered to have sufficient discretion to conduct a suit, it was proper that they should be represented and their interest protected by a next friend. It is true that the statute does not specifically provide that infants may take an appeal from the decisions of the probate court through a next friend, but express

1. Action of infants by next friend.

statutory authority is hardly necessary. All courts guard the interests of infants, and that they may, by next friends, institute proceedings in the courts for the enforcement of their rights or the protection of their interests, is the universal practice, and one which may be regarded as part of the common law. Section 31 of the civil code (Gen. Stat. 1897, ch. 95, § 32; Gen. Stat. 1899, § 4275), which provides that the action of an infant must be brought by guardian or next friend, is only declaratory of the general rule, and, of itself, would seem to furnish express authority for taking an appeal to the district court. (*Sutton v. Nichols*, 20 Kan. 43; *Burdette v. Corgan*, 26 id. 102.) The record shows that due notice of appeal was given, the amount of the appeal bond fixed by the court, and that it was executed, accepted, and approved. The objections made to the notice and bond are immaterial

Error is assigned on the overruling of a motion to suppress the deposition of Lyman Herrick. It was taken in pursuance of an ordinary notice such as is provided in the civil code for the taking of a deposition.

2. Deposition admissible on appeal.

It is contended that testimony for the probating of a will must be taken by a commissioner appointed by the probate court in pursuance of sections 14 and 47 of the act relating to wills (Gen. Stat. 1897, ch. 110, §§ 14, 47; Gen. Stat. 1899, §§ 7592, 7627). While the court might have issued a special commission to some suitable person to take the deposition, it is evident that the one who did take it was deemed to be a suitable person, as the deposition was received and admitted in evidence. When the deposition was taken the case was pending in the district court, and the provisions of the code with respect to the taking of testimony of witnesses beyond the jurisdiction of the court were

applicable, and therefore the deposition was taken with authority and properly admitted. (*Case v. Huey, Adm'r*, 26 Kan. 553.)

Objection is made to the declarations of the decedent at the time the will was executed, and while it was in his possession prior to his death. In offering a will for probate, it is necessary to show the mental condition of the testator, and his statements and conduct at the time of making the will, as well as his expressions with reference to his intentions in making the bequests, are admissible in evidence. Aside from that, the will had been lost, and the declarations of a testator as to the contents of a will are generally deemed to be relevant. (7 A. & E. Encycl. of L., 1st ed., 73.) The declarations complained of were largely *res gestæ*, and while some of them were somewhat remote, they were not of a prejudicial character.

3. Declarations and conduct of testator admissible.

It is next contended that the will is void because the name of one of the subscribing witnesses was written by another person. P. A. Lorry, a neighbor of the testator, was the scrivener and a subscribing witness. The testator signed the will in the presence of Lorry and Frank Reed. Lorry signed his own name as a witness, and Frank Reed, being unable to write, asked Lorry to sign his name. Reed's name was written by Lorry at Reed's request, in the presence of each other and in the presence of the testator, who had requested Reed to act as a subscribing witness. The statute provides that the will of a party " shall be attested and subscribed in the presence of such party by two or more competent witnesses, who saw the testator subscribe or heard him acknowledge the same." (Gen. Stat. 1897, ch. 110, § 2 ; Gen. Stat. 1899, § 7580.) It appears that Reed did not physically participate in

4. Name of witness may be written by another.

signing his name. It is conceded that if he had made his mark, touched the top of the penholder, or guided the hand of Lorry, when the name was written, it would have been a valid attestation. Will the omission of a mere formality or empty ceremony, no trace of which can be found on the will itself, defeat the attestation? We think not. Under the statute, the name of the testator even may be signed by another, if done at the request of the testator and by his express direction. The witnessing of a will is surely of no greater importance than the execution of the same by the testator. He had a right to choose his own witnesses — the ones who would identify the will and by whom his capacity and condition at the time of its execution might be established. In all business affairs such a signing is deemed to be sufficient, and the most important documents and instruments may be legally signed by a person other than the maker, if done in his presence and by his express direction. There is nothing in the statute indicating that the ordinary rules governing the subscribing to papers or the signing of instruments shall not apply in the execution of wills, nor that one who causes his name to be written by another must touch the pen or guide the hand that writes it in order that it may be deemed his personal act. The purpose of attestation is to make certain that the will offered for probate is the one that was actually executed, and also to surround the testator with witnesses capable of judging and testifying as to his capacity to make a will. These purposes can be as well subserved by a witness like Reed, who caused his name to be written by another in the presence and at the request of the testator, as if he had gone through the empty form of touching the pen while Lorry wrote his name.

Some of the courts have given what we deem to be

Schnee v. Schnee.

undue importance to the physical participation in the act of signing, and have ruled that witnesses must do some manual act toward making the signature. The more satisfactory authorities, as well as reasons, sustain the view that the name of an attesting witness who is unable to write may be written by another at his request, in his presence and in the presence of the testator. As stated in *Lord v. Lord*, 58 N. H. 7, " to require a person, whose name is to be written in a testamentary transaction, to hold or to touch the pen, or to do anything which the law does not require him to do in other cases of attestation, seems to establish a distinction without a difference." See, also, *Upchurch v. Upchurch*, 16 B. Mon. (Ky.) 102; *Jesse and als. v. Parker's Adm'rs and als.*, 6 Grat. (Va.) 57; *In re Strong's Will*, 16 N. Y. Supp. 104; *Smythe v. Irick*, 46 S. C. 299, 24 S. E. 69, 32 L. R. A. 77.

The last contention is that the adjudication refusing to probate the will that was produced in 1883 was a bar to this proceeding. Under the facts of the case, the doctrine of *res judicata* does not apply, as we cannot say that the will offered for probate and refused was the last will of Gilbert Schnee. The testimony tends to show that the last will and the one which was then presented for probate was changed and mutilated after the testator's death, or at least that it is not the intrument which has been established as the last will and testament of Gilbert Schnee in the present action. When this proceeding was instituted by the minor children to obtain probate of the will, no trace of the document could be found, nor has it been seen by any one since about the time that a will was offered for probate in 1883. There was sufficient proof of loss and spoliation to warrant the introduction of testimony as to the contents of the

*5. Proof of lost will sufficient.*

will, and we think its provisions have been substantially proved; that it was entitled to be admitted to probate, and is as effectual to pass the property of the testator as though the original will had been probated and recorded.