### INSUFFICIENT EVIDENCE TO ESTABLISH A MISSING WILL.

#### Probate Court of Franklin County.

IN THE MATTER OF THE ALLEGED SPOLIATED WILL OF MARY L. THOMPSON, DECEASED.

#### Decided, July 17, 1914.

*Wills—Conditions Under Which a Spoliated Will May be Admitted to Probate—Declarations of Decedent and Her Husband as to Existence of Will—Failure to Establish Contents With Precision.*

1. A will being in the custody of a person other than a testator, and not being in existence after death of the latter who was incapable of revoking it, or not having access to it, it must have been fraudulently destroyed in the lifetime of the testator, or subsequent to his death. If so destroyed it was fraudulently so done, and the legal result is the same precisely as if it had continued in existence up to the time of the death of the testator.

2. To establish the contents of a spoliated will upon declarations alone of the testator, without other clear and convincing evidence as to

the precise provisions of the will would be an unsafe rule of evidence.

3. A spoliated will can not be admitted to probate, notwithstanding declarations which sufficiently establish its existence at the time of the death of the testator, if it is impossible to determine its contents by clear and convincing evidence as to its provisions.

*Franklin Rubrecht* and *Louis A. Alcott*, for proponents.

*Charles J. Pretzman, Thomas H. Bennett, Frank Frebis* and *Charles E. Nixon*, contra.

KINKEAD, J. (acting probate judge).*

This is an application to probate an alleged spoliated will, The testimony offered to prove the making of the will consists of one of the witnesses thereto—the other being deceased—and of quite a number of persons who heard the declarations made by the deceased to the effect that she made a will. The evidence shows that declarations to this effect were made by both the deceased and her husband, that they had both made their wills, and that they had been deposited in the safe of the husband in his law office.

The declarations of Mrs. Thompson clearly show that she had made a will; these, together with the declarations made by the husband, tend to prove that he had also made a will; the evidence also discloses that the wills had been deposited in the safe of the husband; and that, at least, her will had been in his possession up to within two or three days prior to her death.

There is no definite and positive testimony as to the full and precise contents of the will; no witness is produced who either read or heard it read. There is nothing to show the contents of the will except declarations made by the deceased. The real estate was in the name of Mrs. Thompson. It had been acquired by the husband with the exception that seven hundred dollars had been contributed thereto by Mrs. Thompson, which sum she had received from the estate of her parents.

The following are substantially the facts which the evidence tends to prove: Mrs. Thompson stated that *both* had made their

*During illness of the probate judge.

wills, and that the property was to be divided, half and half, be-
tween the two nephews, Bennie Parker on her side, and Dean
Weirick on the husband's side.   One important item of evi-
dence, the effect of which counsel did not comment upon, was to
the effect that on one occasion Mrs. Thompson declared that the
wills were both in the safe, but "she knew it would not amount
to that" (witness snapping her fingers) ; that she was afraid
to take her will away from her husband's office for fear "he
would take his away and destroy it," and that she could not
"tell who will go first."   Again, she said, "We have got them
both fixed for the two boys"; that "Bennie and Dean will both
be fixed."   In the last illness of the wife the husband declared,
"Well, we have got our wills both made and they are up in my
office in the safe; but I am not going to give her up yet."
Through a period of years Mrs. Thompson made declarations to
different persons that she had made her will; that the two had
made their wills; that her sister, Mrs. Walcutt, was to get her
diamonds, and her nephew and her husband's nephew were to
get the real estate in equal shares; that after both of their deaths,
the property was to be divided between the two nephews.   After
the death of Mrs. Thompson, her husband declared that he was
not going to give the diamonds to Mrs. Walcutt; that it did not
make any difference what his wife wanted; that all they wanted
was his money and diamonds; that he was not going to give it
to them; that he could not help what they wanted, he was not
going to let them have a thing—no money, no diamonds, or any-
thing.

The declarations of both Mrs. Thompson and her husband
showed that the latter had custody of the will.   The declara-
tion of the husband on Thursday night previous to his wife's
death on Sunday, November 30th, 1913, showed that he had cus-
tody of her will.   It is apparent from her condition and the cir-
cumstances that she was unable thereafter to obtain her will,
that is, between the time he made the declarations that the will
was in his safe and her death on Sunday evening.

Without further review of the testimony, all of it substantial-
ly shows the above to be the claims of the proponents of the will.

Two questions are, therefore, presented:

First, was the will destroyed subsequent to the death of the deceased.

Second, have the contents been sufficiently proved.

The statute permitting spoliated wills to be probated explicitly requires that the will must have been unrevoked at the death of the testator, and that it has been lost, spoliated or destroyed since his or her death.  Code, Section 10546.

The degree of evidence required to establish both the execution and existence of the will and its contents is that it must be clear, strong, positive, free from bias, and convincing beyond a reasonable doubt.  *Cole v. McClure*, 88 O. S., 1.

I am of the opinion that the rule applies to the facts in this case, as contended by counsel for the proponents of the will; that, it being out of the custody of the testator, there is no presumption from failure to find the will that it was destroyed by the deceased.

I think the rule of the case of *Schultz v. Schultz*, 35 N. Y., 653, might properly be applied in this case, because the statute of New York, under which the case was decided, is precisely the same as the one in Ohio as to the existence of the will subsequent to the death of the testator.  That is, the will being in the custody of another, if it was not in existence after the death, and the testator was incapable of revoking it, or had not access to it, it must have been fraudulently destroyed in the lifetime of the testator, or subsequent to the death.  The fraud in such case is upon the testator by the destruction of her will, so that she will die intestate, when she intended and meant to have her estate disposed of by will, and never evinced any change of that intent.  If so destroyed, it was done fraudulently as to her, and, in judgment of law, the legal results are the same precisely as if it had continued in existence up to the time of her death. And it is true that the fact of the existence of the will subsequent to the death can, like any other fact, be established either by presumption or circumstantial evidence, as well as by direct evidence.  *Gibson v. Gibson*, 6 C.C.(N.S), 269.

It seems entirely probable that if the will was in the safe of the husband on Thursday night prior to the death of the decedent, when he made the declaration that it was there, it was probably destroyed under such circumstances that it might come within the rule above stated, and might well be considered as a will destroyed subsequent to the death of the testator.

The court would be entirely satisfied to admit the will so far as this point is concerned if the contents were established beyond a reasonable doubt and by clear, strong, positive evidence, which was free from bias. The serious and doubtful question is as to the contents of the will. If there is a reasonable doubt as to this matter, it can not be admitted to probate.

The question whether or no the declarations of a decedent or testator are alone sufficient to prove the contents of a will is an important one which does not seem to have been considered by the courts to a very great extent. And some of the cases are not very satisfactory, because they do not go into the reason and logic of the question. Of the decisions cited by the texts upon wills, *Schnee* v. *Schnee,* 61 Kan., 643, seems to be the only one clearly maintaining the view that such declarations alone may be sufficient.

*McDonald* v. *McDonald,* 142 Ind., 55, when carefully read and considered, does not squarely decide the question.

Other adjudications support the view that evidence of the declarations of the testator is admissible to *corroborate* the testimony as to execution and contents of a will. *Lane* v. *Hill,* 68 N. H., 275.

Other well considered cases are to the effect that such declarations are not alone sufficient to prove the contents of a lost will. (*Mercer* v. *Macklin,* 14 Bush. (Ky.), 434; *Clark* v. *Morton,* 5 Rawle (Pa.), 23; *Clark* v. *Turner,* 50 Neb., 290.) The latter case is a very carefully considered one.

The uncertainty and doubt cast upon the question of the contents of this will by the declarations of the deceased and her husband, all considered together, furnish illustration of the dangers incident to the adoption of such a rule, especially when it will operate to destroy the effect of statutory provisions relat-

ing to the making and probate of wills. It is a general funda-
mental rule of evidence that declarations of persons are always
to be received by the triers of facts with caution, for the reason
that they may not have been perfectly understood, they may not
have been accurately repeated, so that the full effect of all that
may have been stated by the declarant may be reproduced. And
this rule should be especially observed in a case like this.

As was well stated in the case of *Chisholm* v. *Ben,* 7 B. Mon.,
Ky., 408:

"It is better that occasional injustice should be done in ex-
ceptional cases upon failure of legal proof, than that trans-
actions within the statute should in all cases be left to the un-
certainties of parole evidence. So the courts in giving effect to
the statutes should pursue the same policy, and should avoid
meeting hard cases by adopting rules which, generally applied,
would defeat the objects of the Legislature."

I think that we would not have so much difficulty in establish-
ing the will upon the sole declarations of the two deceased per-
sons in this case, provided such evidence is to be properly con-
sidered, were it not for the other fact which stands out so boldly
in the evidence that there must have been some kind of a con-
dition in the will of the deceased wife and in any understanding
that may have existed between her and her husband as to the
final disposition of the real estate. This one matter raises a rea-
sonable doubt in the mind of the court as to what the contents
of the will were. The declarations of the deceased, in whose
name the real estate stood, indicate that she and her husband
might have entered into a mutual compact to make what might
be termed mutual wills, so as to finally dispose of the property
upon the death of both of them in a way that had been agreed
upon between the two parties; that is, it would seem from her
declarations that there must have been some understanding and
agreement between the two that the will of Mrs. Thompson was
made in such way in favor of her husband that it left the final
disposition of the real estate to be made by the will of the hus-
band so as to carry out their mutual purpose and understanding
to devise the real estate on the death of both of them in two

equal parts, one-half to her nephew and one-half to his nephew.

If the declarations of the two parties were all to the effect that the wife only had made a will, and that it was in the safe, and that its provisions were such that the real estate was to be divided equally upon the death of both of them to the two nephews, and the diamonds were to go to her sister, and that the real estate was to go to her husband for life, there should not be much question as to the contents of the will, if we have a right to rely upon declarations of the deceased for the purpose of establishing the contents of the will. But it will be remembered by parties in interest that none of the declarations contained any reference or statement relative to the fact as to whether or not Mrs. Thompson's will contained the provision that the real estate was to go to the husband either for life or in fee. It all has reference to the disposition upon the death of the husband to the two nephews, and is silent upon the other point. The real estate being in the name of the wife, it was entirely within her sole power to devise it to her husband for life, and to the nephews upon his death. But her fear, as clearly shown by her declarations that her husband would not carry out their purpose in the making of their wills, indicates that she must have devised the realty to her husband in such way as to leave the final disposition of it entirely within his power, and in reliance upon his promise, and possibly upon a will made by him, that upon his death, it would go to the two nephews. It seems that no other rational conclusion could be arrived at than this, and that she must have left it entirely within the power of her husband to carry out the mutual purpose to make final disposition of the realty to the two nephews. There would have been no other purpose or object in making the two wills, or what might be called mutual wills. They could not have made a joint will, because the wife only was possessed of the property. *Walker* v. *Walker*, 14 O. S., 157.

And, not being tenants in common, they could not have made a joint will. *Betts* v. *Harper*, 39 O. S., 639.

If the two had made a mutual compact to dispose of the property by separate wills, the wife devising it in fee to the husband,

with the understanding that he would devise the fee by his will upon his death, by his separate will, such compact and such wills could not be made effective by admitting the will of the wife to probate under the circumstances of this case.

Because of this doubt which arises from Mrs. Thompson's declarations, the court is of the opinion that the declarations of both Mr. and Mrs. Thompson, under the circumstances of this case, are wholly inadequate to enable the court to arrive at any definite conclusion as to the exact contents of the will of the deceased wife. It would be a dangerous precedent to establish the will under the evidence offered in this case. The court is not justified under the evidence in changing the course of descent, or in ignoring the statutory provisions relative to the making of a will, and in admitting the same to probate. It is the opinion of the court that it would be an unsafe rule to establish a will upon the declarations of the deceased as shown by the evidence, without other clear and convincing evidence as to the precise provisions of the will.

The application to probate the will as a spoliated one under the statute is, therefore, overruled, and probate thereof is refused.