No. 34,844

ELIZABETH ANN FAUSER, By Harry Warren and Douglas Hudson, Her Attorneys and Next Friends, *Appellee*, v. CLARA JORDAN, as Executrix of the Last Will and Testament of Frank C. Jordan, Deceased, *Appellant*.

(103 P. 2d 862)

Opinion filed July 6, 1940.

*A. M. Keene,* of Fort Scott, for the appellant.

*Harry Warren, Douglas Hudson, Howard Hudson* and *Douglas Hudson, Jr.,* all of Fort Scott, for the appellee.

The opinion of the court was delivered by

DAWSON, C. J.: This is an appeal from a judgment establishing a lost, spoliated or destroyed codicil to the last will and testament of the late Frank C. Jordan, of Bourbon county.

Jordan was a single man, seventy-one years of age at his death.

He made his home with his cousin, Clara Jordan, single, like himself. They had safety-deposit boxes for their valuable papers in Fort Scott, where they resided, and also in Pittsburg. Jordan was an orchardist and also did special work as an appraiser of orchards for the Wabash Railway Company. He was a man of substantial means, and had an intimate friend, F. D. Fauser, of St. Louis, who was a Wabash railway attorney.

Jordan had made one or more wills—one dated at Parsons, June 20, 1927. In it he made testamentary disposition of his estate, which included specific bequests aggregating $200,000, and a residual estate of unspecified value. (A month before his death in 1937 he was known to have a little black book listing his holdings of various bonds aggregating $188,824.)

Apparently the testator soon changed his mind touching the tenor of his will of June 20, 1927. Some three weeks later, July 6, 1927, appended to that will in the handwriting of the testator was the following—

"This will drowen at Parsons Kan June 20th 1927 is cancled as I am gowing to draw & other will & this will is nole & void & cancled      F. C. JORDAN."

Whether the testator executed another will about the time he revoked the one of June 20, 1927, is merely conjectural. If he did not, then he was without a will for some sixteen months, from July 6, 1927, until November 1, 1928, at which time, while in Kansas City, Mo., he made a will devising all his property to his cousin, Clara Jordan, and naming her executrix without bond.

Jordan died at Fort Smith, Ark., on August 25, 1937. His will dated November 1, 1928, was probated, and Clara Jordan, its sole beneficiary, qualified as executrix. On September 13, 1938, the appellee herein, a minor, appeared in the probate court by her attorneys and next friends and petitioned that court to admit to probate a codicil to the last will and testament of Frank C. Jordan. She alleged that it had been lost, spoliated or destroyed subsequent to his death. As part of her petition she set up what she alleged to be a carbon copy of the codicil, viz.:

"I, Frank Jordan, of Fort Scott, Kansas, do hereby declare this present writing to be a codicil to my last will and testament bearing date of ——, 19——.

"I hereby revoke bequest made by me to Florence Fitzgibbon and I hereby give ten thousand dollars ($10,000) (heretofore in my will bequeathed to the said Florence Fitzgibbon), to Elizabeth Ann Fauser, daughter of F. D. Fauser, of St. Louis, Missouri.

"Signed, published and declared by the said Frank Jordan to be a codicil to his last will heretofore made who, at his request and in his presence and in the presence of each other we, believing him to be of sound and disposing mind and memory, have hereto subscribed our names as witnesses.

Address of Witnesses            Name of Witnesses

"Dated at Fort Scott, Kansas, ————1936."

The probate court, on the tendered issues, evidence and arguments, refused to permit the probate of the alleged codicil. On appeal the cause was tried at length in the district court which made extended findings of fact and conclusions of law, and gave judgment in favor of the proponent of the codicil. The district court ordered that it be admitted to probate and made of record in the probate court and that it should "have the same force and effect in law as the original would have had if it had been presented, proven and admitted to probate."

Defendant appeals, urging various errors, which will be noted as argued in her brief. She first contends that there was no legal evidence to prove the execution of the alleged codicil. The facts of the preparation of the codicil at the testator's request ·were well established. It was drawn some time in June, 1936, in the office of F. D. Fauser's law firm in St. Louis.

Jordan wanted the codicil drawn so as to make a bequest in favor of his friend Fauser. The latter discouraged that suggestion. Jordan acquiesced and said he would make one in favor of Fauser's minor daughter, which was done. Jordan wanted to execute the codicil and have it witnessed in St. Louis, but because Fauser's daughter was to be the beneficiary, Jordan's friends in that St. Louis law office persuaded him not to have the codicil witnessed there, but to take it home to Fort Scott and have it executed and witnessed there. That he did so is evidenced by various incidents, more or less probative, shown by the record. Shortly after returning home he wrote to Fauser, in part, as follows:

"Mr. F. D. Fauser,                           "Fort Scott, Kansas
St. Louis Mo                                   7/20th/1936

.  .  .

"I have sined the papper & had Mr. Sample witness President Citizens N. Bank at F. Scott, Kan.

"Mr. Trast witness Vice President Citizens N. Bank at Ft. Scott, Kan. both good A one citizens of Ft Scott & men a bout 35 to 38 years old. I will

place the will & that cuts the Fitzgibons out & puts your daughter in for what they would get at my death. . . I just wanted you to know I sined the papper & had it witnessed & will attach to will.

"Yours Resp

"F. C. JORDAN."

The officers of the bank, Messrs. Sample and Trast, mentioned in Jordan's letter just quoted, testified that over a long period of years they had frequently witnessed legal papers for Jordan, and that they frequently witnessed wills and codicils for various people, but neither of them could definitely recall the particular incident of witnessing the codicil in controversy.

Another incident of probative force, and to which the trial court gave credence, was as follows: Jordan died on Wednesday, August 25. His funeral was not held until the following Sunday afternoon. On Thursday morning, next day after Jordan's death, defendant went to the Fort Scott bank where she and Jordan had a safety deposit box, and took therefrom a number of papers, including Jordan's will of November 1, 1928, which named her as beneficiary. She carried those papers home and concealed or disposed of some of them in the bathroom. On the following Saturday, which was the day before the funeral, defendant carried the will to Pittsburg and placed it in the safety deposit box used by her and Jordan in that city, some thirty miles from Fort Scott and in another county. Defendant's tergiversation in respect to this incident probably prompted the trial court to give some evidentiary significance to it prejudicial to her whole defense.

F. D. Fauser testified that he came from St. Louis to attend the funeral of Jordan in response to a telegram from defendant and that on the afternoon of the day of the funeral he and she had a conversation about the codicil. His testimony, in part, reads:

"She said in connection with that certificate to your daughter, upon which I corrected her and said you mean a codicil, she said, 'yes, if I pay you that money, I will be property poor and I don't propose to do that, but if you will go along with me I will go along with you.'"

There were some other evidential incidents of minor significance, but the foregoing summary constituted the principal facts on which the trial court found that Jordan had made and executed the codicil. Passing for the moment the questions raised against the competency of the evidence, we think it was sufficient to meet the requirements of our statute for the establishment and probate of a lost, spoliated or destroyed will or codicil. (G. S. 1935, 22-249 to 22-253; *Schnee*

*v. Schnee,* 61 Kan. 643, 60 Pac. 738; *Graham v. Miller,* 125 Kan. 636, 266 Pac. 33; 2 Bartlett's Kan. Probate Law 375; 68 C. J. 1009; *id.* 1031-1033; and annotation in 34 A. L. R. 1307-1309.)

It is argued on behalf of defendant that the letter of Jordan to F. D. Fauser in which he said "I have sined the papper," etc., was inadmissible because it was not shown to have been written at a time so close to that of the alleged execution and witnessing of the codicil to be considered as part of the *res gesta,* and that it would be otherwise inadmissible. While in our own case of *Schnee v. Schnee,* supra, the declarations of the testator appear to have been made about the time of the execution of his will, the importance of the *time* element in that case arose because the mental condition of the testator at the time the will was executed was in issue. The opinion in the *Schnee* case recognized that the admissibility of the testator's declarations is not strictly confined to matters of *res gesta.* In *Churchill v. Dill,* 145 Kan. 306, 65 P. 2d 337, which was an action to probate a lost will, error was assigned on the admission in evidence of a declaration of the testator made shortly before his death, concerning his will made several years earlier, "The will I made still stands." We held that the declaration was competent and admissible. In that case as here our early cases, *Mooney v. Olsen,* 22 Kan. 69, and *Caeman v. Van Harke,* 33 Kan. 333, 6 Pac. 620, were invoked against the admissibility of the testator's declaration. But this court disposed of the point thus: "What was said in those cases pertains to the questions then before the court, which are distinct from the question we have here." (p. 310.) Even in our most sharply contested will cases, declarations of the testator not made at or about the time the will was executed have been given evidential significance. (See *Protheroe v. Davies,* 149 Kan. 720, 728, 732, 89 P. 2d 890; also annotations in 79 A. L. R. 1498 *et seq.,* 119 A. L. R. 1366 *et seq.,* and 126 A. L. R. 1158 *et seq.*)

It is also contended that aside from the statements in the testator's letter to F. D. Fauser that he had "sined the papper," etc., there was no evidence that Sample and Trast, the Fort Scott bankers, had signed the codicil as witnesses. Their testimony was uncertain. They testified they had often witnessed papers for the testator, and that they had often witnessed wills and codicils for their customers; but neither of them had an independent recollection of having witnessed the codicil in question. But the statement of defendant herself in conversation with the father of the proponent

on the day of the funeral tended to show the existence of the codicil when she said, "If I pay you that money. . . . I will be property poor." Without going into the further evidentiary details with which the record abounds, we think there was sufficient evidence to establish the legal formalities of the codicil.

An argument is made that the codicil was meaningless, because it included language revoking a bequest of $10,000 theretofore made to Florence Fitzgibbon. The only Fitzgibbon bequest about which the record throws any light was one of $5,000 in Jordan's former will, executed in Parsons on June 20, 1927. But there is room in the circumstantial evidence in this record to warrant an inference that Jordan had another will which never came to light; yet be that as it may, the bequest to the proponent appellee was specific and it was not rendered uncertain or meaningless by the context revoking a Fitzgibbon bequest contained in some earlier will with which we have no present concern.

The rule is also invoked that where a codicil cannot be found, there is a presumption that it had been revoked. True, but that presumption can be and was overthrown, to the trial court's satisfaction. Defendant's summary removal of the contents of the Fort Scott safety deposit box, her conversation with Fauser touching the codicil, and the drastic shattering of her own testimony and that of her principal witness on matters material to that issue by cross-examination and by other witnesses, we think the presumption of the revocation of the codicil was overcome.

Another error urged relates to the introduction of a letter from F. D. Fauser to A. R. Thickett, which appellant characterizes as "mere hearsay of the worst kind." But the record shows that it was brought into the case by counsel for appellant on cross-examination of Fauser, and either there or later it was offered in evidence as defendant's "Exhibit A."

The other arguments against the net result in the trial court have been carefully considered, but no error of sufficient gravity to justify a reversal of the judgment is made to appear. It is therefore affirmed.