No. 27,933.

In re Probate of the Will of Nancy Ann Miller, Deceased; BERTHA M. GRAHAM et al., *Appellees*, v. ANDREW MILLER, *Appellant*.

(266 Pac. 33.)

SYLLABUS BY THE COURT.

1. WILLS—*Probate and Establishment—Evidence of Lost Will.* The evidence examined and held to be sufficient to prove that a lost will had been executed in the manner required by law.

2. SAME—*Establishing Lost Will—Evidence—Witnesses.* In a proceeding to prove a lost will and to admit it to probate, where a party to the proceeding, who after the death of the testator always had possession and control of the will, who claimed all the property devised by the will, and who is called as a witness by the adverse parties, testifies that the will gave all the property to him, the adverse parties may then call other witnesses and prove by them that the party claiming the property had stated to them that the will gave to him a life estate in the property and provided that on his death the property should go to those seeking to probate the will.

Appeal from Miami district court; GARFIELD A. ROBERDS, judge. Opinion filed April 7, 1928. Affirmed.

*Alpheus Lane* and *Karl V. Shawver*, both of Paola, for the appellant.

*E. H. Coughlin, R. E. Coughlin,* both of Paola, and *J. W. Parker,* of Olathe, for the appellees.

The opinion of the court was delivered by

MARSHALL, J.: This is a proceeding commenced by Bertha M. Graham, Henry H. Miller and Nettie J. Glenn, children of Andrew Miller and Nancy Ann Miller, to probate the will of Nancy Ann Miller under the provisions of section 22-249 of the Revised Statutes. Andrew Miller, the husband of Nancy Ann Miller, was the only other

Evidence, 22 C. J. p. 297 n. 5. Wills, 40 Cyc. pp. 1279 n. 92, 1285 n. 26; 38 L. R. A. 433; 34 A. L. R. 1300; 28 R. C. L. 380.

Graham v. Miller.

party interested in the proceeding to probate the will.. His interests were antagonistic to those of Bertha M. Graham, Henry H. Miller and Nettie J. Glenn. On the hearing in the probate court, that court refused to admit the will to probate, and Bertha M. Graham, Henry H. Miller and Nettie J. Glenn appealed to the district court, where the proceeding was again tried. That trial resulted in a judgment admitting the will to probate. From that judgment Andrew Miller appeals to this court.

At the conclusion of the trial the district court made findings of fact and conclusions of law, as follows:

"The court finds from the evidence, and from a preponderance of the evidence:

"1. That Andrew Miller and Nancy Ann Miller (who is the same person as Annie Miller), were husband and wife, residents of Miami county, Kansas, where they had resided many years prior to the death of said Nancy Ann Miller; that at the time of her death the following heirs survived her: Andrew Miller, her husband, Bertha M. Graham, her daughter, Nettie Glenn, her daughter, and Henry Miller, her son, all of whom are still living; that at the time of her death she was the record owner of certain real estate in Miami county, Kansas.

"2. The court finds that several years prior to her death the said Nancy Ann Miller went with her husband, Andrew Miller, to the office of Numa Wells, an experienced attorney at law of Paola, Miami county, Kansas, who, at their request, prepared two papers, one for Andrew Miller and one for Nancy Ann Miller; that each of such papers were, by each of said parties respectively, duly executed as the will of Andrew Miller and as the will of Nancy Ann Miller, and by said testator and said testatrix left in the custody of their said attorney. The exact date of such execution is to the court unknown.

"3. That at the time of the execution of said will by her, said Nancy Ann Miller was of full age, sound mind and memory and under no undue influence; that she was then a resident of Miami county, Kansas.

"4. That said attorney, Numa Wells, died September 23, 1906. That said Nancy Ann Miller died January 17, 1912.

"5. That soon after the death of Nancy Ann Miller the said Andrew Miller received, from the effects of the said Numa Wells, the will which he had executed, and destroyed the same. That at some time thereafter, the exact date being unknown to the court, the said Andrew Miller received the will of Nancy Ann Miller from the effects of the said Numa Wells, deceased, and retained the custody and control of the same by first placing it among his effects in his home and then, later, by depositing it with other of his valuable papers in his safety deposit box in the Farmers and Mechanics Bank, at Osawatomie, Kan.; that since obtaining said will from the effects of Numa Wells, deceased, that the said Andrew Miller has had the exclusive custody and control of the same; that he willfully withheld the same from probate; that he refused to have the same probated, although requested by devisees

therein named to probate it; that he was present at the time the same was executed and knew the contents thereof, and knew that it was the will of Nancy Ann Miller, deceased.

"6. That the testatrix of said will, Nancy Ann Miller, devised, and that the terms and conditions of said will gave to the said Andrew Miller the use, for his lifetime only, of the property owned by her, the said Nancy Ann Miller, at the time of her death, and that after the death of said Andrew Miller said property was to go to the said three children of said testatrix, namely: Bertha M. Graham, Nettie Glenn and Henry Miller, in equal shares.

"7. That said will was unrevoked by the testatrix thereof at the time of her death.

"8. That the same should be admitted to probate and of record in the probate court of Miami county, Kansas, as and for the last will and testament of Nancy Ann Miller, deceased."

### CONCLUSIONS OF LAW.

"1. That said applicants are entitled to have the said instrument admitted to probate and of record in the probate court of Miami county, Kansas, as and for the last will and testament of Nancy Ann Miller, deceased.

"2. That the property of the testatrix, Nancy Ann Miller, was, by the terms of said will, devised to the husband of said testatrix, Andrew Miller, for the term of his natural life only, and at his death to go to the surviving children of said testatrix, namely: Bertha M. Graham, Nettie Glenn and Henry Miller, in equal shares."

1. Andrew Miller argues that there was no evidence showing that Nancy Ann Miller ever executed a will. On cross-examination, Andrew Miller testified as follows:

"By MR. COUGHLIN: Q. Mr. Miller, have you had possession of these deeds that the defendant has offered in evidence here all these years? A. Well, I guess so.

"Q. Where have you kept them? A. Well, I think we generally kept them in a bank box.

"Q. Did you keep them in the same place where you kept this will? A. Yes.

"Q. Did you lose any other paper except this will? A. Not that I know of.

"Q. That is the only paper you had in your possession that you can't find? A. That is all.

"Q. Did I understand you to say there were no witnesses to this will? A. No.

"Q. I want to call your attention to your testimony and ask you to listen well. A. All right, sir.

"MR. COUGHLIN: At a hearing had in the probate court on the 25th of September, 1926 (reading):

" 'Q. When you went to Mr. Wells' office it was for the purpose of each drawing a will, wasn't it? A. Yes.

" 'Q. When you left there you were satisfied that each of you had executed a proper will? A. Yes.

" 'Q. In accordance with your own wishes? A. Yes.

" 'Q. As far as you know, then, the will was properly executed, wasn't it? A. As far as I know, yes.

" 'Q. You don't distinctly recall seeing the witnesses' names on the paper? A. No; I don't know.'

"Were those questions asked you, and you gave those answers at that time? A. I don't know whether there was any witnesses there.

"Q. I didn't ask you that. Were those questions asked you on this occasion I speak of, and did you give those answers? A. Well, I suppose so. I don't remember."

The transcript shows that the following occurred on the trial in the district court:

"THE COURT: Do I understand you made a will at the same time?

"THE WITNESS: Yes, each one of us made a little will apiece, both alike.

. . . . . . . . . . . . . . . .

"THE COURT: Mr. Miller, at the time you and your wife went to Mr. Wells' office, did you go up there for the purpose of having him write your wills?

"THE WITNESS: Yes.

"THE COURT: Did you then, when you arrived at his office, request him to write a will for yourself and a will for your wife?

"THE WITNESS: Yes, sir; each one of us."

There was evidence tending to prove that Andrew Miller had often said the will was signed by two witnesses. He refused to present it for probate when requested to do so by the plaintiffs. The will was lost while it was in his possession. He is claiming adverse to it. Under such circumstances, the rules governing the proof of execution of the will should not be strictly applied in his favor.

In 1 Page on Wills (2d ed.) it is said:

"It is said that one who has destroyed a will is estopped to resist probate thereof." (§ 637.)

"The statutes upon the subject of lost wills are generally framed upon the theory that, within limits of safety, the spoliator of a will should be prevented from gaining anything by his wrongful act." (§ 790.)

"Where the evidence discloses that the will was in the possession of a party interested in suppressing the will, it is held that a presumption arises that the will which such interested party has suppressed was executed in the form prescribed by law." (§ 794.)

In 40 Cyc. 1279 the writer says:

"If a will has been fraudulently suppressed or destroyed, it is presumed to have been legally drawn and executed." (See, also, *In re Estate of Lambie*, 97 Mich. 49, 55; *Jones et al. v. Casler*, 139 Ind. 382, 393; and *Anderson et al. v. Irwin*, 101 Ill. 411, 416.)

The will was drawn by an experienced attorney at Paola, and he must have known the law concerning the formalities under which a

will should be executed. It is presumed that he complied with that law.

In 1 Page on Wills (2d ed.), § 679, the writer says:

"Evidence that the will was drawn and the execution supervised by one who was experienced in such subjects is competent, as a presumption of fact may thereupon arise that the execution was properly accomplished, especially after a lapse of years. . . . Such evidence is, of course, not conclusive as to due execution, but in connection with the general presumption of regularity, it may prevail as against adverse evidence."

The court concludes that there was evidence sufficient to establish that the will had been executed as required by law.

2. Andrew Miller contends that "there was no competent evidence showing the contents of the will unless it would be the testimony of Andrew Miller, who testified that he was to have all the property after his wife's death." He contended that if a will had been made it provided that all the property should go to him on the death of Nancy Ann Miller. His interests were antagonistic to those of the plaintiffs. He was the adverse party in the proceeding. The will had been in his possession and under his control all the time after he received it from the effects of Numa Wells, deceased. He refused to have it probated. He was produced as a witness by the proponents of the will and was asked concerning its contents. He knew how the will disposed of the property. He testified that the will of Nancy Ann Miller provided that all her property was to be his. Afterward, the plaintiffs produced a number of other witnesses who testified that Andrew Miller had stated to them that the property should go to him during his lifetime, and that on his death it should go to the three children, Bertha M. Graham, Henry H. Miller and Nettie J. Glenn. Andrew Miller objected to that testimony on the ground that the parties who produced the witnesses were seeking to impeach their own witness. The general rule is that a party producing a witness cannot impeach him, but there are many exceptions to that rule. A party producing a witness is not bound by his testimony on material matters. What Andrew Miller said about the contents of the will was properly introduced in evidence against him on the ground that they were admissions made by him against his interest. Such admissions can always be introduced in evidence against the party making them if otherwise competent. (*Greer v. Higgins*, 8 Kan. 519, 22 C. J. 297.) There was evidence to show the contents of the will of Nancy Ann Miller.

The judgment is affirmed.