*In re* ESTATE OF BERNARD THOMAS.

APPEAL OF JOSEPH THOMAS.

1. WILLS—ESTABLISHMENT OF LOST WILL.

    In Michigan, the method of establishing an alleged lost will is provided by statute (3 Comp. Laws 1929, § 15547).

2. SAME—DESTRUCTION—REBUTTABLE PRESUMPTION.

    Rebuttable presumption that will was destroyed by testator *animo revocandi* arises where it cannot be found upon proper search being made at his death especially where it is not traced out of his possession (3 Comp. Laws 1929, § 15547).

3. SAME—LOST WILL—BURDEN OF PROOF—PRESUMPTIONS.

    The burden is upon the proponent of a lost will to show facts or circumstances which overcome presumption of revocation in order to justify jury in sustaining the lost will (3 Comp. Laws 1929, § 15547).

4. SAME—LOST WILL—EVIDENCE—INTENT.

In proceeding to establish an alleged lost will, record *held,* insufficient to afford more than a speculative basis for verdict for proponent where it shows testator knew it had been lost or misplaced at least three weeks before his death and that he had a carbon copy of it but does not indicate that he desired it to remain in force rather than that he wanted to destroy or change it (3 Comp. Laws 1929, § 15547).

5. SAME—PRESUMPTION OF REVOCATION—INFERENCES.

Rebuttable presumption of revocation of a will may fairly be inferred from evidence that testator knew his will had been lost or destroyed in ample time to make another but failed to do so (3 Comp. Laws 1929, § 15547).

Appeal from Wayne; Merriam (DeWitt H.), J. Submitted October 22, 1935. (Docket No. 137, Calendar No. 38,622.) Decided December 10, 1935.

Joseph Thomas petitioned the probate court for the allowance of a will of Bernard Thomas alleged to have been "lost, concealed, suppressed or destroyed." Earl Thomas objected thereto. Petition denied. Proponent appealed to circuit court. Verdict for proponents. Judgment for contestant *non obstante veredicto.* Proponents appeal. Affirmed.

*Fred K. Mann* (*Casper C. Cutler,* of counsel), for proponent Joseph Thomas.

*Peck & Kramer,* for proponents Henry Wiederoder and Viola Hamming.

*Kenneth F. Stone,* for contestant.

NORTH, J. Bernard Thomas died November 30, 1934. Appellant petitioned the probate court of Wayne county to allow for probate an alleged will of deceased which petitioner set forth in his petition had "been lost, concealed, suppressed or destroyed." On appeal to the circuit court the issue

was tried before a jury and the alleged lost will allowed. On motion *non obstante veredicto* judgment was entered disallowing the alleged lost will. Proponent has appealed.

The method of establishing an alleged lost will in this State is provided by statute. 3 Comp. Laws 1929, § 15547. Decision herein turns upon whether the proponent introduced evidence sufficient to rebut the presumption that the will was destroyed by the testator with intent to revoke it and to sustain the verdict allowing the alleged lost will.

" 'It is without question the rule of law that, where a will cannot be found at the death of the testator upon proper search being made, and especially where the will is not traced out of the possession of the testator, it is to be presumed that it was destroyed by him *animo revocandi.*' *In re Keene's Estate,* 189 Mich. 97, 102 (Ann. Cas. 1918 E, 367). This presumption of revocation may be met by proof of declarations of the testator indicating the will was still in force." *In re Estate of Taylor,* 271 Mich. 404.

Testator left surviving him as his sole heir-at-law a son, Earl Thomas, who is a contestant herein. Bernard Thomas made a will in 1928. He made another will in 1932. No provision was made therein for his son, Earl, or either of the latter's two children. A niece was one of the principal beneficiaries under the 1932 will, but she died prior to 1934 at which time the alleged lost will was executed. By the terms of this will a substantial portion of the estate was left to the son, Earl Thomas, and to his two children; but the bulk of the estate was given to the testator's brother, Joseph Thomas, the proponent herein. This latter will was executed March 15, 1934, in the office of Attorney James E. Haggerty. Two carbon copies of the will were

typed. After its execution the testator took away with him the original and both carbon copies. About the 1st of November, 1934, the testator had a telephone communication with Mr. Haggerty. We quote the latter's testimony touching this phase of the case.

"Mr. Thomas got on the phone, and he said I would like to know, in case of my ———— well, he said how it would affect ———— how it would become effective. I said, haven't you your will there? He said, I have misplaced it, I have been looking for it for a few days. * * * I believe he says, 'I can't find it,' that is my recollection of it."

In the latter part of November, 1934, the testator had another telephone conversation with Mr. Haggerty. Concerning this telephone communication Mr. Haggerty testified:

"The old gentleman got on the 'phone and said, 'Come out and see me.' I said, 'I cannot, what is your trouble?' He said, 'Oh, I am so sick, I am going to die this time.' * * * Well, I said again, 'What is your trouble?'—this is my best recollection of it. I said, 'What is your trouble?' and he says, 'I can't find it,' and I said, 'Your will?' and he says, 'Yes.' Well, I told him I was leaving town immediately and upon my return, which would be around Thanksgiving day, I would be out to see him."

Before the attorney went to see Mr. Bernard Thomas, he died, as above noted, on November 30, 1934.

Counsel agree that the case is one of first impression in this jurisdiction in so far as it involves the loss of a testator's will during his lifetime. The trial judge seems to have been moved to grant contestant's motion for judgment *non obstante* on the ground:

"That testator was aware, during his lifetime that the will was misplaced or lost, and that he had ample time within which to have re-executed the will had he so desired."

The trial judge was of the opinion that under the circumstances the presumption that the will was destroyed with the intent of revoking the same was not met by the testimony in the case. In the brief of one of the contestants it is stated, and we think properly so, that the burden is upon the proponent of a lost will to show facts or circumstances which overcome the presumption of revocation in order to justify a jury in sustaining the alleged lost will. Contestant claims in the instant case the proponents have failed to produce such testimony.

A careful review of the testimony in this record fails to disclose any statement of the testator or any other circumstance tending in any way to disclose that the testator was concerned with the loss or misplacement of his will because he desired that it should remain in force as his last will and testament, rather than because he desired to locate it in order that he might destroy it or change some of its provisions. It conclusively appears that he knew of the loss or misplacement of the will at least three weeks before his death; that he had in his possession a carbon copy of the will; but that he did nothing in the way of re-establishing the instrument or making certain that its provisions should continue in force. Nor is there testimony of any facts or circumstances from which a fair inference may be drawn as to whether the testator discovered and destroyed his will after the date of his last telephone communication with Mr. Haggerty. Under such a record, particularly in the absence of testimony that Mr. Thomas was concerned with the loss or misplace-

ment of his will because of a desire to have his estate administered in accordance with its provisions, it was a matter, not of proof, but of mere speculation for the jury as to whether or not the testator had destroyed his will *animo revocandi.*

"The weak spot in the appellant's case is that there was no proof that the testator left behind him an unrevoked will, or any will whatever. On the contrary, it is an admitted fact that the will, which it was alleged the testator had executed, was lost or destroyed in his lifetime, and that its loss was known to him months before his death. There was proof of his declarations that he intended to make another will, possibly containing the same provisions, but he never did so. Knowing that he had no will, he declined or neglected to make one. From this a presumption of revocation may fairly be inferred." *Deaves's Estate,* 140 Pa. 242, 249 (21 Atl. 395).

"The failure of a testator who is informed of the loss or destruction of his will, to publish another, raises a presumption of intention to revoke it; but this presumption may be rebutted by other evidence, such as the declarations of the testator himself. Proof of the manner in which a will was destroyed is not required when it was last in the possession of the testator and cannot be found, the general rule being that if the will cannot be found, but may be traced to the testator's hands, it is to be presumed, until the contrary be shown, that it was destroyed by him with the intention to revoke it." 1 Alexander, Commentaries on Wills, p. 747.

See, also, *Steele* v. *Price,* 5 B. Mon. 58 (44 Ky.); and *Campbell* v. *Smullen,* 96 N. J. Eq. 724 (125 Atl. 569).

Judgment entered in the circuit court is affirmed. Costs to appellee.

Potter, C. J., and Toy, Fead, Wiest, Butzel, Bushnell, and Edward M. Sharpe, JJ., concurred.