No. 33,709

LENA S. MANN, DOROTHY CLARK, SHIRLEY STEPHENSON, and DEBORAH MANN, a Minor, by LENA MANN, Her Next Friend, *Appellees*, v. ROY HAINES, as Executor of the Last Will and Testament of Minnie L. Leonard, Deceased; and W. S. MARTIN et al., *Appellants*.

(73 P. 2d 1066)

Opinion filed December 11, 1937.

L. J. Bond, K. M. Geddes, both of El Dorado, D. W. Eaton, of Wichita, R. A. Cox, of Augusta, and Howard Roepnack, of Denver, Colo., for the appellants.

R. C. Woodward, H. P. Woodward, both of El Dorado, and Eliot H. Evans, of Chicago, Ill., for the appellees.

The opinion of the court was delivered by

WEDELL, J.: This action was brought by certain beneficiaries of a probated will to obtain a construction thereof. The trial court construed the will in accordance with their contention, and the defendants, heirs at law, and one of the beneficiaries, who was made a defendant, appeal.

The heirs at law contend the record discloses a later will was lost or destroyed, the probated will was revoked and they are entitled to the estate of the deceased. Frank Leonard, the defendant beneficiary, is not an heir at law and does not contend the probated will was revoked, but urges the trial court erred in the construction of that portion of the will which affects his interest. The administrator appears in support of the judgment upholding the probated will.

The appeal presents two main issues. The first is whether the probated will was revoked. The second is, if that will was not revoked, then what constitutes a proper construction thereof.

The probated will was executed January 22, 1935, the testatrix died July 12, 1936, and the will was regularly probated August 3, 1936. The document which the heirs contend revoked the probated will was executed in February of 1936.

For convenience and clarity we shall refer to the plaintiff beneficiaries under the probated will as appellees, to the one defendant beneficiary as the appellant Frank Leonard, and to the defendant heirs at law as appellants.

The trial court made findings of fact and conclusions of law. The pertinent facts found in relation to the purported revoking instrument were:

13. "In the early part of February, 1936, Minnie L. Leonard planned a trip to Texas for her health. Shortly before going and about February, 1936, she went to said bank with a sheet of paper with typewriting on it and talked with Mr. Wilson and Mr. McCauley. In the presence of each of them she stated in substance that she was not satisfied with her former will, that she desired to make some changes in it and that the paper she exhibited to them was her will and that she desired them to act as witnesses. She then signed

said paper in their presence and they in her presence and in the presence of each other signed their names to said paper as witnesses, but they did not read it *and she did not tell them anything of what was written thereon. She took this paper away with her, and the evidence does not show that it was ever seen after that date or what became of it. The evidence does not show what was written on said paper,* that she ever at any time divulged, or that anyone except herself ever knew what was written on said paper. All parties seem to agree that the will of January 22, 1935, was typed by Minnie L. Leonard on a typewriter that she had in her home, and while there is no direct evidence on the point, yet it seems to be assumed that she personally typed the contents of the paper that was witnessed by Wilson and McCauley in February, 1936, which she referred to as her will.

"After the execution of said will of January 22, 1935, and before February, 1936, she expressed an intention to some time change its provisions and that she expected to give to Frank Leonard a larger share of her property than given to him by her will of January 22, 1935, but that she intended to leave a substantial part of her estate to the city of Augusta.

14. "After returning from Texas and about the 3d day of July, 1936, she, with friends, started to drive to her cottage in Minnesota where she expected to spend the summer. She was taken sick on the road and died in Minnesota on July 12, 1936.

15. "The day after her funeral a search was made for her will. She had an iron safe in her home in which she kept many of her papers, and in this safe was found the will of January 22, 1935, enclosed in the envelope that has been offered as defendant's exhibit A. A careful and diligent search has been made for other wills and for the paper witnessed by Wilson and Mc-Cauley about February, 1936, but nothing has been found.

"On August 3, 1936, the will of January 22, 1935, was admitted to probate in this county and her estate is now in the process of administration." (Italics inserted.)

It is not entirely clear from the record exactly how much of finding No. 13 was objected to, but it appears appellants objected to the italicized portion of finding No. 13, on the ground it was not supported by evidence and was contrary thereto. In order to include all that may have been embraced in the objection we are assuming the objection extended to and included the word "paper" at the end of the sentence beyond the italicized portion. The brief of appellants contains a "statement of essential facts," with references to the abstract. Diligent search does reveal the testatrix in effect told the attesting witnesses that Mr. Haines was made administrator under the new will. That information, together with the fact of her signature, was all the information they or any other person was shown to have had concerning the contents of the last instrument. The testatrix had folded the paper so as to leave only her signature and attestation clause visible. In substance, all she told the wit-

nesses was that she was dissatisfied with 'her former will and was making some changes. Whether she was referring to changes she was making in language she had employed or in punctuation or to its form in other respects or to substance, or to both form and substance is, of course, a matter of speculation. Certainly, as will presently appear, her former will was not all it might have been from a scrivener's standpoint. Whether the new instrument in reality effected any legal change in the probated will, and if so what change, the evidence did not disclose.

Appellants also requested additional findings of fact, which request was denied. We have carefully examined the requested findings and find no reversible error in that ruling. The trial court might have made some of the findings requested, but such additional findings as it properly might have made would not have altered the conclusions of law.

On the subject of revocation the conclusions of law were as follows:

1. "The evidence does not warrant the legal conclusion that the paper signed by Minnie L. Leonard and witnessed by J. T. Wilson and R. L. Mc-Cauley about February, 1936, was a legal and valid will of Minnie L. Leonard, and does not warrant the legal conclusion that said paper contained either an express or an implied provision revoking her will of January 22, 1935, and does not warrant the legal conclusion that said paper contained any provision revoking, changing or modifying or that was inconsistent with any provision of her said will of January 22, 1935."

2. "The evidence does not warrant the legal conclusion that the will of Minnie L. Leonard, dated January 22, 1935, was by her thereafter revoked, canceled, annulled or changed."

Appellants objected to these conclusions and insist they must be reversed. They insist the plain provisions of G. S. 1935, 22-241 and 22-242, compel this result. We shall begin with an examination of the first section. It provides:

"*A will shall be revoked by the testator,* tearing, canceling, obliterating or destroying the same with the intention of revoking it, by the testator himself, or by some person in his presence or by his direction, or by some other will or codicil in writing executed as prescribed by this act, or *by some other writing signed, attested and subscribed in the manner provided by this act for the making of a will;* but nothing herein contained shall prevent the revocation implied by law from subsequent changes in the condition or circumstances of the testator." (Italics inserted.)

Appellants' theory is, the italicized portion being applicable to the facts in the instant case, the probated will was effectually re-

voked when the testatrix signed the later writing and when it was attested and subscribed by the witnesses. Let us examine that interpretation of the italicized portion in its relation to other provisions of the section and see just what the result would be. Were such construction in harmony with legislative intent every later codicil properly executed would result in the revocation of the will. The same result would follow from the execution, in the manner provided for the making of wills, of any subsequent instrument irrespective of its terms and provisions. Of course, that cannot be a reasonable construction of legislative purpose or intent. Were such interpretation upheld, a testator, for instance, could not dispose of property by a later will or codicil, acquired subsequent to the execution of the first will in which he had not disposed of such property; a testator could not change the person or persons named as executors in the first will; he could not alter the former will by a provision the executor should be required or not required to make bond for the execution of his trust; nor could he alter the inscription to be placed on his tombstone without revoking all other provisions of the will in no wise inconsistent with such later instrument.

A will may consist of any number of instruments. (*Derr v. Derr,* 123 Kan. 681, 687, 256 Pac. 800.) G. S. 1935, 22-241, merely designates the various methods or manners in which a will may be revoked. One of them is by means of a subsequent will. Whether such later will in fact revokes a previous will depends upon its terms and provisions. In order for a will to work a revocation of a former will it must appear the later revoked the former by express terms or that its provisions are so far inconsistent with the former as to make it impossible for the two instruments to stand together. To the extent they cannot stand together the latter, of course, operates as a revocation of the former, but not otherwise. These principles are not only firmly established in this jurisdiction, but almost universally. (*Caeman v. Van Harke,* 33 Kan. 333, 6 Pac. 620; *Derr v. Derr,* supra; *Hill v. Kennedy,* 134 Kan. 560, 7 P. 2d 88.) See lengthy annotation, 51 A. L. R. 652. In the absence of proof of subsequent revocation, the probated will must stand, as the legal presumption is it continued to exist until the death of the testator. (*Caeman v. Van Harke* and *Hill v. Kennedy,* supra.)

Appellants, however, urge the evidence disclosed a second will and even though the second will had in fact been destroyed by the testatrix, such fact would not revive the former will as it was never

republished. The contention is based upon a literal interpretation of G. S. 1935, 22-242, alone, and without regard to the proper construction of G. S. 1935, 22-241. Let us examine G. S. 1935, 22-242. It provides:

"If after the making of any will the testator shall duly make and execute a second will, the destruction, canceling or revocation of such second will shall not revive the first will, unless it appears by the terms of such revocation that it was his intention to revive and give effect to his first will, or unless after such destruction, canceling or revocation he shall duly republish his first will."

First, it should be noted this section requires not only a writing subscribed and witnessed as a will, as is the case in the former section, but in fact requires a will. There was no competent evidence the later instrument in fact constituted a legal and valid will. That fact could have been established only by the instrument itself or by other competent evidence of its contents. An examination of the instrument might have disclosed it could not possibly operate as a will. The only evidence on the subject is that the testatrix said it was a will. The statement, of course, did not make it a will. We really need, therefore, not pursue further appellants' last contention. A short additional statement, however, may be helpful. It must be borne in mind a second will does not necessarily revoke a former will, and if in the instant case the second instrument had in fact constituted a will, there was no evidence it revoked the former will by express terms or by operation of law, and hence the former will was not in need of reviving by publication or otherwise, as it had always remained in full force and effect. There is obviously no need of reviving a will the effect of which has never been disturbed. Since several instruments may constitute a will, G. S. 1935, 22-242, must be interpreted to refer to a second will which had the effect of revoking the first will entirely or in part and not to a will which was in no manner shown to be inconsistent with the first will. The burden of showing such inconsistency was on the appellants who asserted it. In this they failed.

Appellants direct our attention to statements of this court in *Graham v. Miller*, 125 Kan. 636, 266 Pac. 33; *Toley v. Woodard*, 140 Kan. 292, 36 P. 2d 1019; *Weichold v. Day*, 144 Kan. 432, 61 P. 2d 1328, and *Churchill v. Dill*, 145 Kan. 306, 65 P. 2d 337. No principles there stated are in any wise inconsistent with the views herein expressed.

This brings us to the construction of the will. The dispute is be-

tween three of the appellee beneficiaries and the appellant beneficiary, Frank Leonard, as to the contents of the home of the testatrix, in which home Frank Leonard was given a life estate. The executor concedes the correctness of the trial court's ruling. The appellants, heirs at law, concede, if the probated will stands, the trial court was correct in its construction of the will as to the personalty.

A word as to the relation of the parties is interesting and may be helpful. The appellee beneficiaries were Lena S. Mann, a sister of Hugh Leonard, the deceased husband of the testatrix, and Dorothy Clark, Shirley Stephenson and Deborah Mann, the only children of Lena S. Mann. While the appellee, Lena S. Mann, is a devisee under the will, she is not one of the beneficiaries named as to the personalty involved in the construction of the will. That provision pertains to her three daughters above named. The appellant, Frank Leonard, is a brother of Hugh Leonard, deceased. We therefore have, directly interested in the construction of the will as to the personalty, a brother-in-law of the testatrix on one side and the daughters of a sister-in-law on the other side.

Exclusive of the signature and attestation clause, the entire will reads:

"I Minnie L Leonard of the county of Butler and the state of Kansas being of sound mind memory and understanding considering the certainty of death and the uncertainty of the time thereof and being desirous of settling my worldly affairs do therefore make and publish this my last will and testament, in the manner and form following that is to say I give my *home* and rented house store building to Frank Leonard, Augusta Kan at his death to the city of Augusta Kan for swimming pool my farm to Lena Mann, Gilman Ill after expenses payed what *money* left to Lena Mann daughters even money as executor of my last will and testament and i desire that my executor hereinbefore named shall not be required to give bond for the performance of the duties of that office, and lastly i do hereby constitute and appoint Roy Haines as executor of my last will and testament one thousand left in bank for flowers for decoration day for Hugh and Minnie Leonard." (Italics inserted.)

The controversy, insofar as the appellant Frank Leonard is concerned, revolves about the intended meaning of the italicized word "home." Does it include the contents of the home, such as furniture, rugs and equipment of every kind and nature used in connection with the home, and also the garden tools and automobile of the testatrix? The trial court held the will devised three pieces of real estate to the city of Augusta, for the purpose designated in

the will, subject only to the life estate therein to Frank Leonard, and that it did not devise to him a life estate in the contents of the home. Finding No. 16 discloses the nature of the personalty belonging to the estate. It reads:

"At the time of her death Minnie L. Leonard owned the household furniture and fixtures in the house in which she lived. She owned an automobile, wheat, oats, over $50,000 in government and municipal bonds, diamond ear-screws, diamond rings, a promissory note, travelers' checks, money on deposit in the bank, a bank savings account and a bank time deposit. A true, correct and itemized statement of the property owned by her is shown by the inventory filed in her estate on September 19, 1936, and said inventory by reference is made a part of these findings."

Conclusions of law Nos. 5 and 7 read:

5. "It was not the will and intent of said Minnie L. Leonard to give or bequeath to said Frank Leonard any right, title or interest in and to any personal property owned by Minnie L. Leonard at the time of her death, and the expression in her said will reading, 'I give my home and rented house store building to Frank Leonard' did not have the legal effect and should not be construed as giving to said Frank Leonard any right, title or interest in or to any household goods or equipment owned by Minnie L. Leonard at the time of her death, or in or to the automobile owned by her."

7. "It was the will and intent of Minnie L. Leonard, and by the terms of her said will of January 22, 1935, she did provide that all debts, claims and charges against her and her estate, together with all costs and expenses of administering upon her estate, should be paid out of the personal property owned by her at the time of her death, and by the terms of her said will Minnie L. Leonard did give and bequeath all personal property of whatsoever kind belonging to her at the time of her death to Dorothy Clark, Shirley Stephenson and Deborah Mann, in equal shares, and they became the owners thereof, subject only to the payment of the debts and claims against Minnie L. Leonard and her estate and the costs and expenses of administering upon her estate.

"It was the further will and intent of said Minnie L. Leonard and by the terms of her said will of January 22, 1935, the personal property of whatsoever kind belonging to Minnie L. Leonard at the time of her death and remaining after the payment of such claims, debts, costs and expenses, should not be sold by the executor of her will, but should be delivered by said executor to said Dorothy Clark, Shirley Stephenson and Deborah Mann without sale."

The appellant, Frank Leonard, contends the italicized word "home" includes not only the building and grounds on which it stands, but also its contents, including such things as garden tools and the family automobile. In support of that view he urges the intention of the testatrix must be gathered from the language employed and that such language must be read in the light of sur-

rounding circumstances. (*Guthrie v. Guthrie,* 130 Kan. 433, 286 Pac. 195.) He further urges the technical import of words must not be permitted to prevail over the obvious intention of the testatrix. (*Bullock v. Wiltberger,* 92 Kan. 900, 142 Pac. 950.) That such is the rule where the intention of the testatrix is clear, cannot be doubted. Was her intention concerning the contents of the home so obvious as to dispense with the necessity of determining the legal signification of the word "home"? It will be observed the will makes no express provision for the disposition of the personalty therein contained. Frank Leonard calls attention to the words, "i give my home and rented house store building to Frank Leonard."

Three distinct properties were included in this provision. The first two were located on the same tract of ground; that is, on adjacent lots. The property testatrix used as her home embraced three lots, and the rented house was also located on three lots. The store building was located in the business district of Augusta. Frank Leonard stresses the fact testatrix denominated one of the properties as her *"home"* and not merely as a house and that she designated another residence as a "rented *house,"* and the third as a "store building." He urges if the testatrix had merely meant to devise a life estate in the realty which constituted her home, she could have designated the home as "my house," just as she designated the other residence property as a "rented house." He insists a home is more than a building or four walls, and the ground on which the building is located, and that a building without the contents would never be regarded as a home by a woman. The argument, as an abstract proposition, has some appeal. It would, however, carry much greater weight had the will contained a provision that Frank Leonard was to abandon his home and use the home of the testatrix as his home during his lifetime. In that event the question of whether the testatrix had intended to include the contents in her home, in order to provide a home for Frank Leonard, would become quite important. The will, however, is entirely void of any expression of such purpose or intent. In support of appellants' contention we are directed to the case of *Chase National Bank v. Deichmiller,* 107 N. J. Eq. 379, 152 Atl. 697. The case is not in point. The will there provided:

"Any and all real estate which I may own in Crosswick, Burlington county, New Jersey, and particularly my home known as Brookside Lawn, *together with all the furniture, furnishings, household and kitchen utensils and all other chattels used by me and my family in said home.*" (Italics inserted.)

In construing that will the court concluded:

"The words of the testator are 'all other chattels used by me and my family in said home'; the word 'home' means not merely the dwelling house, but the entire residence estate. The words first used—'furniture, furnishings, household and kitchen utensils'—certainly include all chattels in the *house;* hence 'all other chattels' must mean chattels other than those in the house." (p. 380.)

The present will contains no such provisions.

The three appellee beneficiaries contend the three buildings were devised to the city of Augusta for the purpose designated, subject to a life estate to Frank Leonard, and that it is not a reasonable construction of the will to hold the personalty in the home of the testatrix was included in such devise to the city. They further urge the word "home" was employed in a descriptive sense to indicate the particular house and lot the testatrix was using as a home, and not for the purpose of including the contents thereof. Under all the circumstances in the instant case, we regard that view as constituting the more reasonable construction of actual intent. It seems to us the words, "my home and rented house store building," were used for the purpose of designating the real estate she was devising without the necessity of setting forth the legal description of each property. The same method was used to designate the farm which she devised to Lena Mann. The will said, "my farm to Lena Mann, Gilman Ill." Webster's New International Dictionary, 2d ed., defines the word "home" as follows: "One's own dwelling place; the house in which one lives; esp., the house in which one lives with his family; the habitual abode of one's family; also a dwelling house."

The construction we have concluded to place upon the devise is also in harmony with well-established principles. In 69 C. J. Wills, § 1456, it is said:

"Ordinarily a devise of realty does not include personalty. Thus a devise of a farm does not include the personalty or farm produce; nor does a devise of a residence and grounds entitle the devisee to the furniture in the house."

In Thompson on Wills, 2d ed., § 252, the rule is stated thus:

"In the absence of anything in the will showing a contrary intention, a devise of a designated house, place, or tract, does not include personal property in the house or elsewhere on the land."

We therefore conclude the trial court was correct in ruling this personalty was not bequeathed to Frank Leonard. As previously stated, the personalty in the home was not expressly bequeathed to anyone. Who, then, shall receive it? Shall it be said the testatrix

died intestate as to this personalty? We think not. The will clearly discloses first that Minnie L. Leonard did not intend to die intestate, and second, that she did not desire her estate should pass to her heirs at law. Partial intestacy will not be presumed. (G. S. 1935, 22-258; *Guthrie v. Guthrie*, 130 Kan. 433, 286 Pac. 195, and cases therein cited.) In Atkinson on Wills, § 266, page 766, it is said:

"The construction of a will so as to render the estate totally, or partially, intestate is to be avoided if reasonably possible. If the testator has taken the trouble to execute a will with the proper formalities, it will be presumed that he intended thereby to dispose of his property and all of it." (p. 766.)

Does the italicized word "money," as used in the instant will, include the personalty used in and about the home? Appellants, heirs at law, although first taking a contrary view, now concede it does. Frank Leonard contends it does not. If the contents of the home are held not to be embraced in the term "money," such construction could not benefit the appellant, Frank Leonard, as such personalty would then pass to the heirs at law. Frank Leonard is not an heir at law, and hence he is no longer an interested party in relation to the contents of the home. A further word, however, may be helpful. According to finding No. 16, formerly quoted, much of the estate of the testatrix consisted of personalty of various kinds. She directed: "after expenses payed what *money* left to Lena Mann daughters even money." As the word "money" is used in the instant will when considered in relation to the remainder of the will and all of the circumstances, we have no doubt the testatrix intended to include in that term all of her personal property remaining after her debts, funeral expenses and costs of administration had been paid. People frequently speak of someone as "being worth a lot of money." When so speaking they do not necessarily mean "cash," but "property or wealth." We think such was the sense in which the testatrix used the word in her will. In Thompson on Wills, 2d ed., § 245, it is said:

"The term 'money' used in wills is essentially ambiguous. Sometimes it has a very wide meaning, and may in some wills embrace a variety of things. It has often been construed in the broad sense of wealth or property, instead of in its narrow sense as cash, especially where the context of the will and the circumstances surrounding its execution require that it be so interpreted in order to give effect to the testator's intention. . . . A gift of money, however, will be held to include personal property and the real estate only when it appears from the context, construed in the light of the surrounding circumstances, that such was the testator's intention." (pp. 318, 319.)

In 69 C. J., Wills, § 1387, we find the following:

"Where a testator would otherwise die intestate with respect to certain of his property, words and phrases which can be reasonably interpreted to pass the entire property of the testator will be given this effect."

In the instant case it is apparent that unless the word "money" is interpreted as having been intended to include her personalty, of which much of her estate consisted, she died intestate as to it. Such a result would defeat the clear intention disclosed by her will.

·For a lengthy annotation on the subject "what included in term 'money,'" see 93 A. L. R. 514. An examination of the annotation discloses ample authority for the view that where the term money is used, as in the instant case, it may be construed as intending to include all remaining personalty, where such construction will avoid intestacy as to that portion of the testator's estate.

Other alleged errors originally claimed have been abandoned. At least, they are not urged here. We have determined all issues raised on appeal and it follows the judgment in those respects must be affirmed. It is so ordered.