**WOODS, Estate of, In re.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 22200. Decided October 22, 1951.

Kitchen & Messner, Cleveland, for plaintiff-appellee.
H. A. Gillis, Cleveland, for defendant-appellant.

(PHILLIPS, J, of the Seventh District sitting by designation in place of HURD, J, of the Eighth District.)

## OPINION

By SKEEL, PJ.:
    This appeal comes to this Court on questions of law from a final order of the Probate Court of Cuyahoga County, over-

ruling the appellant's application to probate the purported last will and testament of the deceased, dated September 30, 1948. The application was filed on August 31, 1950 and was set for hearing on September 21, 1950. After hearing the evidence on Sept. 21, 1950, the case was marked "Heard and Submitted" and the testimony taken at the hearing was transcribed and filed as provided by §10504-24 GC.

Prior to the filing of the foregoing application to probate the will dated Sept. 30, 1948, an application had been filed by the appellee, Mervin Roy Wolf to probate a purported will of Nathaniel H. Woods dated Jan. 6, 1944, said application having been filed Aug. 5, 1950. Said will was ordered probated as the last will and testament of Nathaniel H. Woods and letters testamentary were issued to Mervin Roy Wolf, the residuary beneficiary thereunder, as Executor of said estate.

The testimony received by the Court upon the hearing as to the will dated Sept. 30, 1948, as shown by the transcript filed in the case and as quoted by the Court in its memorandum opinion, discloses that the appellant, Harry Nelson Walkden, cousin of decedent, at the decedent's request, prepared a will in duplicate; that on the 30th day of September, 1948, he, accompanied by Mr. and Mrs. Wm. F. Fussner, went to the home of decedent where these two identical wills were executed by the decedent who acknowledged said paper writings to be his last will and testament and Mr. and Mrs. Wm. F. Fussner acted as witnesses thereto at his request. The copy which was made by the keys of the typewriter was signed and acknowledged first; followed immediately by a similar execution of the copy made by the use of carbon paper. The decedent kept the first copy and the second copy was delivered to Mr. Walkden for safe keeping. The testimony given by Mr. Walkden on this question was as follows:

"Q. Mr. Walkden, I believe you said you prepared that?

A. Yes.

Q. And that is a carbon copy of the original will that you prepared, is that right?

A. The memorandum printed directly by the typewriter he wanted to keep as a memorandum and this he signed as his will.

Q. Now you—there was an original to that, that is a carbon copy, is it not?

A. They were printed at the same time.

Q. You had carbon paper in between them?

A. Yes.

Q. And the original, the first copy, was also signed by Mr. Woods, wasn't it?

A. Yes, it was signed by Mr. Woods.

Q. And he retained that, didn't he?

A. Yes, sir.

Q. And you retained this, didn't you?

A. Yes, he gave it to me for safe keeping."

* * *

Q. Now, he signed the original first, didn't he?

A. Yes, sir, he signed both of them.

Q. The original will he kept?

A. This is the will.

Q. Let me put this question to you, then, the will upon which the typewriter made the first impression was kept by Mr. Woods?

A. Yes, the memorandum.

Q. Not what you call it; that will which the typewriter made, the first impression was kept by Mr. Woods?

A. Yes, sir.

Q. The will which you have was the carbon copy, and an exact duplicate of what Mr. Woods kept?

A. This is the will."

Before the Court had ruled on the application to probate the will dated September 30, 1948, the appellant on November 29, 1950, filed a motion seeking the right to present newly discovered evidence in support of such application. He also filed on said day an application for a citation directing Melvin Roy Wolf to produce the copy of the will executed September 30, 1948, which had been retained by the decedent.

On January 2, 1951, without the knowledge of the contending parties or their lawyers, an entry, refusing the right to probate the purported will dated September 30, 1948 was made for the reason that the failure to produce the copy of the will retained by the decedent or to account for its absence constituted a revocation thereof. At the same time the Court overruled the motion to take further testimony. On January 5, 1951, a hearing was ordered set for January 19, 1951, on the application for citation to produce the copy of the will above referred to and a motion was filed to vacate the entries of January 2, 1951. This motion was on January 12th, set for trial January 30, 1951, as was the motion for new trial.

On January 19, 1951, the motion for a citation to produce the copy of the will (which was executed in duplicate) retained by the decedent, came on for hearing. At this hearing, the appellant attempted to show that the decedent went to the hospital (Cleveland Clinic) on July 13, 1950, having been taken there by Mervin R. Wolf; that he, Nathaniel H. Woods, died August 4, 1950 and that he did not leave the hospital from the

time he entered it until his death; that Mervin R. Wolf had the keys to the decedent's house; that during a visit to Mr. Woods a day or so after his admittance to the hospital, Wolf said to him "I see you have changed your will." This evidence the court refused to admit or consider as material to the question presented, and upon the conclusion of the hearing the application was overruled. In overruling the application the court said:

"This man stated he doesn't have custody of the Will, doesn't know where it is.

"An application has been filed in this matter and the Court must take strict statutory procedure. This person was asked in Court to produce this Will and the person states he does not have it. Now, unless you can prove that he does, what would be the purpose of this Court sending him to jail? The only purpose of sending him to jail would be to force him to produce it. He says he doesn't have it, the evidence didn't show he did have it, nobody saw it in his hands, nobody saw it in the hands of the decedent or Mr. Wolf. The Court isn't going to send a man to jail for an indefinite period of time on the evidence you have produced here. I will deny the application."

The motion for new trial and the motion to vacate the entries of January 2, 1951, were overruled on February 5, 1951. Notice of appeal was filed February 20, 1951 designating the orders of February 5th, as the final orders from which this appeal is taken.

The errors presented are:

"1. Gross abuse of discretion by the Probate Judge by which he was prevented from having a fair trial.

"2. That the final order, judgment or decree, is not sustained by sufficient evidence, and is contrary to law.

"3. Newly discovered evidence and material which with reasonable diligence he could not have discovered and produced at the hearing on August 31, 1950.

"4. Errors of law occurring in the various proceedings and excepted to by him.

"5. Order of January 2, 1951, refusing probate of the last will and testament by the Probate Judge while matters were yet pending and material to the issues involved.

"6. Overruling Motion for the Taking of Further Evidence filed November 29, 1950, on January 5, 1951, set down for hearallowed counsel to be heard thereon.

"7. Refusal of Probate Judge on January 19, 1951, to require Mervin Roy Wolf to produce testator's copy of said last will

and testament or to account for it; and preventing counsel from questioning him about the same, all of said matters being set forth fully in the record of the proceedings had on said date, to which reference is hereby generally made for sake of brevity.

"8. Refusal on February 5, 1951, to vacate the entry of January 2, 1951 refusing to allow the taking of further evidence.

"9. Refusal on February 5, 1951, to vacate and set aside judgment refusing to probate said will."

When a person makes and executes his will in duplicate, retaining one copy himself and delivering the other copy for safe keeping to the person therein designated as executor, and upon his death the copy retained by the decedent cannot be found, a presumption arises that the decedent has revoked said will. Without evidence overcoming such presumption of revocation, the copy held by the person entrusted therewith cannot be probated as the last will and testament of the deceased.

Crossman v. Crossman, 95 N. Y. 145; In re estate of Chas. E. Bates, Deceased, 286 Pa. 583, 134 Atl. 573; 48 A. L. R. Annot. p. 297; 57 Amer. Juris. p. 377, Sec. 549; 3 A. L. R. (2d) Annot. p. 947; In re Flynn's Estate, 21 N. Y. S. (2d) 496 (Surrogate Court). In re Robinson's will, 257 App. Div. 405, 13 N. Y. S. (2d) 324; In re Wall's Will, 223 N. C. 591, 27 S. E. (2d) 728. Re Estate of Charles E. Bates, deceased, 286 Pa 583, 134 Atl. 513.

The presumption that a deceased person revoked his will, arising because it cannot be found among his papers after his death, is rebuttable and where evidence tending to show that the will was in fact in existence at the time of his death or that its destruction was not accomplished by the deceased with intent to revoke it, the question whether or not the testator revoked such will becomes one of fact to be determined from all of the surrounding circumstances.

In re Wall's Will, supra.

In the case of **Gibson v. Gibson**, 6 C. C. (N. S.) 269 affirmed without opinion, **72 Oh St 677,** the court on page 270 said:

"The fact of the paper's existence subsequent to the death can, like any other fact, be established either by presumption or circumstantial evidence, as well as by direct evidence."

This principle of law is so well established that further citation of authorities is unnecessary.

The transcript shows that the proponents of the will in question presented evidence of its due execution and attestation as provided by law. The only question remaining was whether or not such will had been revoked subsequent to its execution by the testator. A motion directed to the right

to introduce newly discovered evidence on this subject was filed and overruled without the benefit of a hearing. The bill of exceptions containing the evidence taken at the hearing on the application for a citation directing the appellee herein to produce the missing copy of the will signed in duplicate on August 30, 1948, which evidence was in fact the same evidence which appellant was seeking to introduce under his motion for leave to introduce newly discovered evidence, tended to establish the following facts: viz

"1. Under the will admitted to probate the appellee, Melvin R. Wolf was the residuary legatee and would receive from the estate about $50,000.00.

"2. Under the purported will executed August 30, 1948, he would receive $2000.00 and the Cleveland Library was made the residuary beneficiary.

"3. That the decedent was taken to Cleveland Clinic by Mervin R. Wolf on July 13, 1950 and that the decedent was there continuously until his death on August 4, 1950.

"4. That Mervin R. Wolf had the keys to decedent's house and returned thereafter, taking Nathaniel H. Woods to the hospital.

"5. That a day or two after Woods entered the hospital (testimony of nurse) Wolf said 'Uncle Nat, I see you have changed your will,' and Woods replied, 'Yes, I have. Leave me alone,' and further said, 'Bring me the papers,' to which Wolf Replied, 'Uncle Nat, it isn't fair to me.'

"6. That a patient in the next bed to Woods would testify that Woods and Wolf talked about a will and that Wolf said to the patient:

" 'Well, he wasn't talking to the old man Woods, he turned around to me, I asked him did he have any relations, I mean if the old man have any relations, and he says, "Yes, he has a daughter in California" "I am the one taking care of everything at the time and well, he can't change anything. I take care of everything what he has." '

"7. That Wolf talked about the will of September 30, 1948, with the decedent while in the hospital by his own admissions as demonstrated at the hearing on January 19th as follows:

"Q. 'Did you that next morning or at a later date talk with your Uncle about having made or going to make a new Will?'
* * *

A. Yes.
Q. When did you have such conversation with him?
A. I would say about a week or more after he was admitted.
Q. What was the conversation?
A. "Uncle Nat, did you make a new will?"
Q. What did he say?

A. I said, "Did you sign it?" and he said, "Yes, but it is the kind that won't stand."

Q. Who was present at the time?

A. I couldn't say.

Q. He said, "It's the kind that won't stand" did he say what he meant when he said that?

A. No.

Q. Now then, did you know on that next morning of that Will, about which you made reference to just now?

A. The next morning after he was admitted?

Q. Yes?

A. No.

Q. Was he referring to the will of September 30, 1948, if you know?

A. I would assume so.' "

The foregoing evidence would certainly have been material on the question of whether or not the will of August 30, 1948 had been revoked by the testator and being material to a vital issue in the case should have been admitted.

In the case of **Bauer v. Heaton, 68 Oh Ap 181,** the third paragraph of the syllabus provides:

"When a motion to reopen a case is made immediately after the court announced its conclusion on the evidence already introduced, it is the duty of the court to exercise its discretion to determine whether, under the circumstances, justice requires that the movant be permitted to introduce additional evidence, and when the court overrules the motion without exercising any discretion under the mistaken belief of lack of power, an abuse of discretion or error of law is committed, for which the judgment should be reversed."

While there is some authority to the contrary the general rule is that declarations of the testator may be shown for the purpose of overcoming the presumption that a will has been destroyed animo revocandi arising from the fact that the will which had been left with the testator or to which he had access can not be found after his death. 3 A. L. R. 2nd, 960—Parag. 6. In the case of Gurley v. Armentraut, 6 C. C. (N. S.) 156, at page 159 of the opinion the Court said:

"When a will once known to exist and to have been in the custody of the testator can not be found after his decease, the legal presumption is that it was destroyed by the testator with the intention of revoking it. To strengthen such presumption it is competent to prove the declarations of the testator after making his will; that he has destroyed, or intended to destroy, the same.

"But while the declarations of the testator may be used to

weaken the presumption that he has destroyed his will with the intention of revoking it, his declarations may also be received as evidence to strengthen and fortify the presumption that he has destroyed his will with such intention, whether it be the making of a will or the destroying of one, the competency of the testator's declarations as evidence is alike in each case and for the same reason admissible. Collagan v. Burnes, 57 Me., 449, 465."

The same principle is demonstrated in the case of **Chenowith v. Cary, 17 O. O. 76** where it was held that to aid in determining the question of revocation and not as separate and independent evidence of a revocation, the declarations of the testator that he had destroyed the will is competent evidence. **Behrens v. Behrens, 47 Oh St 323.** No difference is to be found as to whether the purpose of the testimony is to strengthen the presumption of revocation or to overcome such presumption. The question of its competency is the same in either event.

In the case of Churchill v. Dill, 145 Kan. 306, 65 P 2d 337, the Court held that declaration of the testator shortly before his death to the effect that the will he made "stands" was admissible as tending to rebut the presumption of revocation created because the will could not be found after his death.

There is some authority in Ohio that in order to overcome the presumption of revocation it must be shown that the will was in existence at the time of the death of the testator.

**Re Sinclair, 5 Oh St 290; Behrens v. Behrens, 47 Oh St 323;** Gibson v. Gibson, 6 C. C. (N. S.) 269.

The evidence which the appellant sought to introduce met fully the requirements of this rule.

We must conclude therefore, that there was error prejudicial to the rights of the appellant in refusing to permit the introduction of newly discovered evidence before finally determining the question of whether or not the will dated September 30, 1948 was in fact the last will and testament of the decedent. It was further error prejudicial to the rights of the appellant in not granting a new trial after such evidence, which was clearly relevant on the question of whether such will had been revoked, had been presented to the Court in the trial of the special proceeding under §10904-10 GC, before the motion for new trial was overruled. The judgment refusing to probate said will and overruling of the motion for new trial and the motion requesting the right to introduce newly discovered evidence is reversed and cause remanded for further proceedings. The question of whether the appellant was, under the evidence presented upon the hearing of the application for a citation directing appellee

to produce the will was legally entitled to such order is not properly before us and the errors alleged under that proceeding are dismissed.

Exceptions noted. Order see Journal.

PHILLIPS, J, THOMPSON, J, concur.